STATE of Oklahoma, ex rel. William J. TRIMBLE, Plaintiff–Appellant,

v.

The CITY OF MOORE, Oklahoma, a municipal corporation, Defendant,

and

Louis Kindrick, Dudley Freeman, Don Black, Willie Edwards, Robert W. Swanagon, Odell Morgan and Charles Thompson, Defendants–Appellees.

STATE of Oklahoma, ex rel. William J. TRIMBLE, Plaintiff–Appellant,

v.

The CITY OF MOORE, Oklahoma, a municipal corporation, and Louis Kindrick, Defendants–Appellees.

Nos. 71423, 71422.

Supreme Court of Oklahoma.

Oct. 1, 1991.

William A. "Bill" Pipkin, Moore, for appellant Trimble in Nos. 71,422 & 71,423.

Margaret McMorrow–Love, Greg A. Castro, Fellers, Snider, Blankenship, Bailey & Tippens, Lee Slater, Oklahoma City, and David A. Poarch, Norman, for appellees Morgan and Thompson in No. 71,423.

Margaret McMorrow–Love, Greg A. Castro, Fellers, Snider, Blankenship, Bailey & Tippens, Charles J. Watts, Looney, Nichols, Johnson & Hayes, John W. Coyle III, William B. Federman, Day, Hewitt & Timmons, Oklahoma City, Rebecca J. Patten, Patten & Patten, Norman, and Thaddeus Freeman, Arlington, for appellees Kindrick, Freeman, Black, Edwards and Swanagon in No. 71,423.

Margaret McMorrow–Love, Eric S. Eissenstat, Greg A. Castro, Fellers, Snider,

Blankenship, Bailey & Tippens, and John W. Coyle III, Oklahoma City, for appellee Kindrick in No. 71,422.

Jim T. Priest, Edward D. Hasbrook, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellee City of Moore in No. 71,422.

OPALA, Chief Justice.

The dispositive issue in these two taxpayer *qui tam*[1] actions is whether city officials violated the law in disbursing the funds in question. In No. 71,423 the questions tendered are: [1] Did the plaintiff timely bring an appeal from the dismissal of the *qui tam* action as to two defendants (city personnel board members)? [2] Should this appeal be dismissed because a so-called "consent judgment" was rendered for the City? and [3] Was summary judgment correctly given to the remaining defendants? We answer the first and second questions in the negative and the third in the affirmative.

In No. 71,422 the question tendered is whether a municipality was authorized to pay the mayor's and his dependents' health insurance premiums absent a charter provision authorizing such payment? We answer this question in the affirmative.

The Taxpayer's appeals in both cases stand consolidated for disposition by a single opinion.

I

THE ANATOMY OF LITIGATION

A.

*Cause No. 71,423—Taxpayer's Qui Tam Action Against Certain Members of the Moore City Council, Two City Personnel Board Members and City Manager for the Recovery of Allegedly Unlawful Expenditure of Public Funds for the City Manager's Back Salary and Attorney's Fees.*

The Moore City Council [Council] terminated the employment of Robert W. Swanagon [Swanagon or City Manager] who had contracted to serve as manager of both the City of Moore [City] and the Moore Public Works Authority [MPWA].[2]

Following his dismissal, the City Manager filed a wrongful termination action against individual Council members, the City and the MPWA.[3] He also appealed to the Moore Personnel Board [Personnel Board], alleging that his termination was wrongful. The Council challenged the Personnel Board's jurisdiction to hear the appeal, filed objections and requested board members Odell Morgan [Morgan] and Charles Thompson [Thompson] to disqualify for bias. The district court denied the City's request for injunctive relief to prevent the Personnel Board from hearing

---

1. A *qui tam* action is one brought under a statute that establishes a penalty for the commission or omission of a certain act and provides that the penalty shall be recoverable in a civil action, with part of it going to the one bringing the action and the rest to the state or a public body. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542, 63 S.Ct. 379, 383 n. 4, 87 L.Ed. 443, 448 (1943); *Marvin v. Trout*, 199 U.S. 212, 225, 26 S.Ct. 31, 34–35, 50 L.Ed. 157, 162 (1905); *Abbadessa v. Tegu*, 121 Vt. 215, 154 A.2d 483, 484 (1959); *New Jersey S.P.C.A. v. Russ*, 83 N.J.L. 450, 83 A. 961, 962 (1912); *Stevenson v. Stoufer*, 237 Iowa 513, 21 N.W.2d 287, 289 (1946); *see also* Black's Law Dictionary, 5th Ed. (1979) at p. 1126; Webster's Third New International Dictionary (1961) p. 1867. In *Marvin, supra*, 199 U.S. at 225, 26 S.Ct. at 34–35, the Court observed: "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government. The right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer."

2. *See infra* notes 23 and 24 for contract provisions pertinent to this litigation.

3. His action appears below as: Robert W. Swanagon v. Perry Lawson; Buck Thomas; Jesse Christal; and Mary Marical, individually and collectively as members of the City Council of the City of Moore, and Trustees of the Moore Public Works Authority; The City of Moore, Oklahoma, a municipal corporation, and the Moore Public Works Authority, an Oklahoma Public Trust, No. C–86–2162T, District Court, Cleveland County, State of Oklahoma.

Swanagon's appeal.[4] The Personnel Board overruled the City's objections, denied the disqualification request and made its "findings and orders," which directed that Swanagon be (a) reinstated to the office of City Manager and Manager of the MPWA with back salary and benefits and (b) reimbursed for all costs associated with his defense and appeal of wrongful termination from those offices. The City appealed to the district court,[5] but before that court reached a decision, the Council reinstated Swanagon and approved the payment of his back salary and legal fees.[6] All these expenses were paid from MPWA funds. The appeal was then dismissed at the City's direction.

After the public funds were expended, William J. Trimble, appellant herein [Taxpayer], and nine other resident taxpayers of the City filed with the Council and trustees of the MPWA a written demand for repayment of these allegedly illegal expenditures and, if these funds are not repaid, that an action be brought for their recovery. Council members, who also serve as MPWA trustees, acknowledged receipt of the demand but refused to comply with it.

The Taxpayer filed this *qui tam* action pursuant to the provisions of 62 O.S.Supp. 1982 § 372 and 62 O.S.1981 § 373,[7] haling into court as defendants four Council members (Dudley Freeman, Don Black, Willie Edwards and Louis Kindrick) and two Personnel Board members (Morgan and Thompson) for allegedly authorizing the illegal and unlawful payment of public funds, and also the City Manager who received and benefited from the payments. As required by statute, the City was made a defendant.[8]

The two Personnel Board members sought dismissal of the *qui tam* action on

4. This action appears as: In the Matter of the Appeal of Termination of Robert W. Swanagon, Case No. 1(86) Personnel Board of the City of Moore, a municipal corporation, Oklahoma, No. C–86–2950(M), District Court, Cleveland County, Oklahoma.

5. Its action appears as: The City of Moore, Oklahoma v. Odell Morgan, Harvey Wreath, and Charles Thompson, comprising the Moore Personnel Board, No. C–86–2790, District Court, Cleveland County, Oklahoma.

6. The Council voted to pay the following amounts—$52,207.07 to the City Manager for his accrued wages and benefits, and $61,891.00 to the City Manager's lawyer for his legal fees and court costs.

7. The pertinent provisions of 62 O.S.Supp.1982 § 372 are:

"*Every officer ... of any ... city ... who shall* hereafter *order or direct the payment of any money* or transfer of any property belonging to ... such ... city ... *in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement* made or attempted to be made, for the state or any such ... city ... or by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, *shall be jointly and severally liable in damage* in all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally *liable to the*

... city ... affected, *for triple the amount of all such sums of money so paid,* and triple the value of property so transferred, *as a penalty, to be recovered at the suit of* the proper officers of the ... city ... or of *any resident taxpayer* thereof, as hereinafter provided." (Emphasis added.)

The terms of 62 O.S.1981 § 373 provide:

"Upon the refusal, failure or neglect of the proper officers ... of any ... city, ... after *written demand made upon them* by ten resident taxpayers of ... such ... city ... to institute or diligently prosecute proper proceedings at law or in equity for the *recovery of any money or property* belonging to the ... city ..., *paid out* or transferred by any officer thereof in pursuance of any *unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made,* by any of its officers for the ... city ... or for the penalty provided in the preceding section, any resident taxpayer of ... such ... city ... affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the ... city ... might institute and maintain for the recovery of such property, or for said penalty; and *such municipality shall in such event be made defendant,* and one-half (½) the amount of money and one half (½) the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, *shall be paid to such resident taxpayer as a reward.*" (Emphasis added.)

8. *See* 62 O.S.1981 § 373, *supra* note 7.

the ground that their authority extends only to officers and employees of the City and not to MPWA officers. They asserted the Personnel Board acts in an advisory capacity vis-a-vis the Council and only makes recommendations.[9] They argued that the Personnel Board lacks authority either to (a) approve the payment of any City or MPWA claim [10] or (b) order payment of Swanagon's back pay or his counsel fees. The Taxpayer responded that although the Charter allows only a "classified" officer to have a board hearing, the Personnel Board conducted a hearing for the City Manager, an "unclassified" city official. He asserted that the Board's "findings and orders" directing reinstatement of Swanagon and payment of these claims was sufficient to bring the two Board members within the purview of § 372 and subject them to *qui tam* liability.

The trial court dismissed the claim against Morgan and Thompson, gave summary judgment to the City Manager and four Council members and approved a so-called "consent judgment" for the City. The Taxpayer brings this appeal from the first two dispositions.

### B.

*Cause No. 71,422—Taxpayer's Qui Tam Action Against the Moore City Mayor For Recovery of Allegedly Unlawful Expenditure of City Funds For Health Insurance Benefits for the Mayor and his Dependents*

This controversy centers on the City of Moore's [City] payment of health insurance benefits for the City Mayor, Louis Kindrick [Kindrick or Mayor], and his dependents. The Council had approved the payment of the Mayor's health insurance benefits. The Mayor reimbursed the City for one-half of the premiums paid for his dependents.

The appellant [Taxpayer] [11] and nine other resident taxpayers of the City filed with the Council a written demand that it recover from the Mayor the allegedly unlawful

9. The Moore Charter authorizes employees in the *"classified services"*, who have been laid off, suspended, demoted or removed, to appeal from that decision to the Personnel Board, which shall ultimately make a written report of its "findings and recommendations." The City Manager is in the *"unclassified services"* [Art. VIII 8–3(1)(b) ].

Art. VIII of the Charter provides in part:
§ 8–1. "Appointments and promotions in the service of the city shall be made solely on the basis of merit and fitness; and removals, demotions, suspensions, and layoffs shall be made solely for the good of the service. The council, consistently with this charter, by ordinance or personnel rules, may regulate personnel matters and provide for proper personnel administration."
§ 8–2. "There shall be a personnel board consisting of three members appointed by the council for overlapping six-year terms...."
§ 8–3(1)(b). "All officers and employees of the city shall be divided into the *classified and the unclassified services.*
(1) The following shall constitute the *unclassified service:*
\* \* \* \* \* \*
(b) The *city manager,* and one secretary to the city manager, if any; ...." (Emphasis added.)
§ 8–4. "The city manager or any other authority who lays off, suspends without pay for more than ten days, demotes, or removes any regular (that is, nontemporary) officer or employee *in the classified service* ... shall ... deliver ... to the officer or employee a written statement of the reason or reasons for the layoff, suspension, demotion, or removal. Such officer or employee *may appeal in writing to the personnel board....* As soon as practicable thereafter, the board shall hold a public hearing on the appeal, or give an adequate opportunity therefor, and shall report in writing its *findings and recommendations* ...; and the ... authority having power of removal shall then make a final decision in writing regarding the appellant's layoff, suspension, demotion, or removal ...; provided that, if the board finds that the layoff, suspension, demotion, or removal was made for a political reason or reasons or for any other reason or reasons than the good of the service, it *shall veto the layoff, suspension, demotion, or removal, and the action by the ... authority shall be nullified thereby."* (Emphasis added.)

10. The terms of City Ordinance § 2–112 provide:
"No account or claim shall be paid unless audited and allowed by the council as aforesaid and *no monies shall be paid from the treasury except upon warrant from the clerk signed by the mayor and attested by the clerk."* (Emphasis added.)

11. The Taxpayer is also the plaintiff in No. 71,-423.

expenditure of City funds for his health insurance premiums.[12] They also demanded that, if the money is not repaid, the City bring an action for its recovery.

After the Council and the Mayor failed to meet these demands, the Taxpayer brought a *qui tam* action under §§ 372 and 373[13] against the Mayor and the City. He sought treble damages for the allegedly unlawful use of city funds to pay the health insurance benefits.

The parties filed a stipulation of facts[14] and waived a trial by jury.[15] Based upon the parties' stipulations, briefs, arguments of counsel and one witness' testimony, the court rendered judgment for the Mayor and the City.

## II

### A TAXPAYER *QUI TAM* ACTION

A *qui tam* action is one brought under a statute that establishes a penalty for the commission or omission of a certain act and provides that the penalty shall be recoverable in a civil action, with part of it going to the one bringing the action and the rest to the state or a public body.[16]

■ Resident taxpayers of a city may, in the name of the State of Oklahoma as plaintiff, bring a *qui tam* action under §§ 372 and 373[17] to recover city money that was paid out illegally or without authority. These statutes transform a pri-

vate citizen and taxpayer into a representative of the state for the purpose of protecting the city's property rights. Taxpayers may assume this role only after certain preliminary requirements have been met. They must first demand in writing that the city officers institute proceedings to recover the money. The right of action accrues to the taxpayers when the city officers either neglect or fail to act upon the demand. The city must be made a party defendant in order to have its rights considered and be bound by the judgment entered. A *qui tam remedy* allows the plaintiff to recover public funds with treble damages. One-half of all the money collected is to be paid to the taxpayer as a reward.

## III

### THE TAXPAYER'S CLAIM IN APPEAL NO. 71,423

#### A.

### Dismissal Of Appeal As To Personnel Board Members

■ The Personnel Board members contend that this appeal should be dismissed for untimeliness. The claim against the Personnel Board members was dismissed on *June 13, 1988*. Summary judgment was then given to the remaining defendants on June 30, 1988. The petition-in-error was

---

**12.** The taxpayers sought reimbursement of $6,683.40 which the City paid for the Mayor's and his dependents' health insurance coverage.

**13.** *See supra* note 7 for the pertinent terms of 62 O.S.Supp.1982 § 372 and 62 O.S.1981 § 373.

**14.** Stipulations filed in a case are solemn admissions of fact and are binding and conclusive on the parties as well as on the court. *Bill Hodges Truck Co. v. Gillum*, Okl., 774 P.2d 1063, 1068 (1989); *Nanonka v. Hoskins*, Okl., 645 P.2d 507, 508 (1982); *City of Lawton v. Lewis*, Okl., 566 P.2d 133, 134 (1977); *Yamie v. Willmott*, 184 Okl. 382, 88 P.2d 325, 326 (1939).

**15.** In a common-law case in which the jury is waived the trial judge's resolution of the disputed facts bears the force of a verdict rendered by a well-instructed jury. It must be affirmed if supported by any competent evidence. *Bradley*

*v. Clark*, Okl., 804 P.2d 425, 427 (1990); *United Engines, Inc. v. McConnell Const., Inc.*, Okl., 641 P.2d 1101, 1102 (1981); *Leveridge v. Notaras*, Okl., 433 P.2d 935, 941 (1967); *Bullard v. Caulk*, 206 Okl. 353, 243 P.2d 691, 694 (1952).

**16.** *United States ex rel. Marcus v. Hess, supra* note 1, 317 U.S. at 542, 63 S.Ct. at 383 n. 4; *Marvin v. Trout*, 199 U.S. at 225, 26 S.Ct. at 34–35; *Abbadessa v. Tegu, supra* note 1 at 484; *New Jersey S.P.C.A. v. Russ, supra* note 1 at 962; *Stevenson v. Stoufer, supra* note 1 at 289; *see also* Black's Law Dictionary, *supra* note 1 at 1126; Webster's Third New International Dictionary, *supra* note 1 at 1867.

**17.** *See supra* note 7 for the pertinent provisions of §§ 372 and 373; *see also Vaughan v. Latta*, 168 Okl. 492, 33 P.2d 795, 796 (1934); *State ex rel. Remy v. City of Norman*, Okl., 642 P.2d 219, 220 (1982).

filed here *July 21, 1988*, more than 30 days following the dismissal.

There is but one jurisdictional prerequisite for invoking this court's appellate review—a petition-in-error that must be filed within 30 days of an appealable order.[18] The June 13 dismissal, from which this appeal was brought, constitutes an appealable order because it let the Board members out of the lawsuit and there was no other claim against them.[19] As to these defendants this appeal was not timely filed. We hence have no reviewing cognizance over the correctness of the trial court's June 13, 1988 dismissal.

### B.

### Dismissal Of Appeal As To Other *Qui Tam* Defendants

■ The other *qui tam* defendants (Council members and City Manager) assert the appeal should be dismissed because a so-called "consent judgment" was rendered for the City. They contend that the City, an essential party to a § 373 claim, is no longer a defendant by virtue of the judgment. Without the City as a party to the appeal, the defendants reason, this court is precluded from declaring the rights of *any* real party in interest in the *qui tam* action.

This contention is utterly without merit. No liability was ever sought below against the City, whose status is that of a statutory party beneficiary. The *qui tam* Taxpayer wages war *for* the City.[20] If the battle is won, the "spoils of war" go *to* the City and a reward *to* the *qui tam* plaintiff.[21] If no liability is imposed, the action nonetheless terminates without any *negative legal consequence to the City.* This was the case here. In that context the "non-negative judgment", which was given "for the City", follows in due course the *qui tam* defendants' exoneration. It denotes no more than that the City stands legally unaffected.

---

**18.** *See* 12 O.S.1981 § 990; Rule 1.15(a), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2; *Mayhue v. Mayhue*, Okl., 706 P.2d 890, 893 (1985).
The pertinent terms of 12 O.S.1981 § 990 provided:
"*An appeal to the Supreme Court may be commenced* from an appealable disposition of a court or tribunal *by filing* with the Clerk of the Supreme Court *a petition in error, within thirty (30) days from the date of the final order or judgment sought to be reviewed.*
 * * * * * *
Provided, further, that, *except for the filing of a petition in error as provided herein, all steps in perfecting an appeal are not jurisdctional.*" (Emphasis added.)
Section 990 was repealed eff. Jan. 1, 1991 (Okl. Sess.L.1990, Ch. 251, § 20); for a later statutory scheme governing appeals from judgments or other appealable orders, *see* 12 O.S.Supp.1990 § 1004 and its repeal, Okl.Sess.L.1991, Ch. 251, § 22, eff. June 1, 1991.
The pertinent terms of Rule 1.15(a), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2, are:
"*The petition in error shall be filed within thirty days from the final judgment or final order;* appellant shall attach to the petition in error a copy of the designation of record filed in the trial tribunal pursuant to Rule 1.20(a). The interval allowed for filing a petition in error may not be extended by either the trial tribunal or this Court. * * *" (Emphasis added.)

This rule was amended eff. Jan. 1, 1991; the amended version applies to appeals from appealable decisions rendered on or after that date.

**19.** *Frazier v. Bryan Memorial Hosp. Authority,* Okl., 775 P.2d 281, 285 (1989); *Oklahomans for Life, Inc. v. State Fair of Okl.,* Okl., 634 P.2d 704, 706 (1981); *Ritter v. Perma–Stone,* Okl., 325 P.2d 442, 443 (1958).

**20.** *See supra* note 7 for the pertinent terms of 62 O.S.1981 § 373; see also *Vaughan v. Latta, supra* note 17 at 795; *State ex rel. Remy v. City of Norman, supra* note 17 at 220.

**21.** The Taxpayer's position is similar to that of a trustee for the City to the extent of the City's interest. This posture is analogous to that of bailee of damaged goods. He may sue the tortfeasor for recovery of the entire damages, although in the event of recovery any amount in excess of his own interest must be held in trust to the extent of the bailor's interest. *American Tug Boat Co. v. Washington Toll Bridge Auth.,* 48 Wash.2d 117, 291 P.2d 668, 672 (1956); *Cramer v. Fischer Bakery Co.,* 98 Ohio App. 25, 128 N.E.2d 161, 164 (1953); *Hudson Transit Corporation v. Antonucci,* 137 N.J.L. 704, 61 A.2d 180, 183 (1948); *Union Pac.R. Co. v. Meyer,* 76 Neb. 549, 107 N.W. 793, 794 (1906); *Southern Bonded Warehouse Co. v. Roadway Express, Inc.,* 104 Ga.App. 458, 122 S.E.2d 147, 148 (1961).

## C.

### The Contested Payments Are Legally Correct

█ The Taxpayer asserts that the payment of MPWA trust funds to Swanagon and his lawyer was illegal and unauthorized. We disagree.

The Council has statutory authority to appoint and remove the city manager.[22] Its decision to reinstate Swanagon to the position of city manager, whether influenced by the Personnel Board's recommendation or for some other independent reason, was a legal act. The City Manager's employment contract constitutes an agreement between the City and the MPWA *qua* employers and the City Manager *qua* employee.[23] The contract provides that either employer *may pay* his salary, and that *both* entities are jointly and severally liable for all such payments.[24]

Article VII(a)(4) of the MPWA Declaration of Trust [Trust] [25] authorizes the trustees to enter into and perform contracts of every lawful kind and to issue warrants "without limit as to amount" [26] as long as the beneficiary municipality receives a monthly report.[27] Furthermore, the Trust authorizes the trustees to defend against and settle "any claim or controversy" in which the Trust is interested, including the payment of the claimant's attorney's fees

22. The terms of 11 O.S.1981 § 10–106(1) provide in pertinent part:

"All powers of a statutory council-manager city, including the determination of matters of policy, shall be vested in the council. Without limitation of the foregoing, the council may:
1. Appoint and remove the city manager as provided by law: ...."

The pertinent provisions of 11 O.S.1981 § 10–112 are:

"The council shall appoint a city manager for an indefinite term by a vote of a majority of all its members...."

The terms of 11 O.S.1981 § 10–115 provide:

"The council may suspend or remove the city manager or acting city manager at any time by a vote of a majority of all its members."

23. The employment agreement states in pertinent part:

"This Agreement, made this 4th day of January, 1982, between the City of Moore, Oklahoma, a municipal corporation, and the Moore Public Works Authority, a public trust, hereinafter called the Employer, and Robert W. Swanagon, hereinafter called the Employee.

\* \* \* \* \* \*

4. Duties. The Employee is engaged as the City Manager of the City of Moore, Oklahoma, and as the Authority Manager of the Moore Public Works Authority. He shall perform all of the duties imposed upon him by the Charter of the City of Moore, Oklahoma, the trust indenture creating the Moore Public Works Authority....
5. Extent of services. The Employee shall devote his time, attention, and energies to the business of the Employer, it being understood that the business of each of the entities named as Employer is peculiar in that it is of such nature that it is best handled by one person and that he acts as City Manager simultaneously as he acts as Authority Manager...."

24. The agreement provides in part that:

" \* \* \* 3. ... Either of the two entities named herein as Employer [City and MPWA] may pay said [salary and expense allowance] sums or they may be apportioned between them, as they agree, but both entities are jointly and severally liable for all of such payments.\* \* \* "

25. The March 2, 1962 Declaration of Trust of the Moore Public Works Authority, as amended by August 18, 1980 supplement.

26. Art. VII(a)(4) of the Trust provides in pertinent part:

"POWERS AND DUTIES OF TRUSTEES
Subject to and in full compliance with, all requirements of law applicable to this Trust or to the Trustees thereof:
(a) The Trustees, in the manner hereinafter set forth, shall do, or cause to be done, in lawful manner, all things which are incidental, necessary, proper or convenient to carry fully into effect the purposes enumerated in Section III of this instrument, the general authority hereby given being intended to make fully effective the power of the Trustees under this instrument; and, to effectuate said purposes, said Trustees are specifically authorized (but their general powers not limited thereby, notwithstanding any specific enumeration or description), in a lawful manner.

\* \* \* \* \* \*

(4) To enter into, make and perform contracts of every lawful kind ...; and, subject to the provisions of paragraph (b) of this section, *without limit as to amount, to ... issue ... warrants....*" (Emphasis added.)

27. *See* Art. VII(a)(4), *supra* note 26. Art. VII(1) of the Trust provides in pertinent part:

"The Trustees shall make a monthly report, in writing, to the Beneficiary Municipality covering trust operations during the preceding calendar month...."

from Trust property and assets.[28] All the expenditures are treated as expenses of executing the Trust instrument.[29]

In sum, the trustees' act of approving the payments from MPWA funds was in accordance with the Council's authorized reinstatement of Swanagon, the employment contract and the Trust. We are unable to find any *illegal or unlawful* payments made by the *qui tam* defendants either to or in behalf of the City Manager. We hold that the expenditure of MPWA funds was not legally infirm. Summary judgment for these defendants is hence affirmed.

## D.

### Any Infirmity In The Expenditure of MPWA Funds Before Approval by The Trustees Was Cured By Their Ratification of the Claim

■ The Taxpayer asserts the questioned expenditures are illegal because they were made in an unauthorized manner.[30] He states that the Council approved the claims on May 4, 1987, and the following day they were paid from Trust funds—some thirteen days *before* the trustees' ap-

proval of the expenditures. The trustees' failure to follow statutory procedures for approval of an otherwise valid claim will not subject them to *qui tam* liability. This is so because the trustees *later ratified* all the payments.

## IV

## THE TAXPAYER'S CLAIM IN APPEAL NO. 71,422

### A.

### The City's Payment Of Health Insurance Benefits For The Mayor And His Dependents Is Not Legally Infirm

The Taxpayer asserts that the Mayor is entitled *only* to that compensation specifically authorized by law ($300.00 in compensation and actual expenses) and that he is not entitled to any other compensation or *benefits*.[31] We are not persuaded.

The parties stipulated that the City is a charter city of the first class whose charter was approved by the electors. The compensation and benefits to be paid to council members and to the mayor are provided in § 2–3 [32] *of the Moore City Charter [Char-*

---

**28.** Art. VII(i) of the Trust provides in pertinent part:

"... And the Trustees are expressly authorized, in their discretion, to bring and prosecute or defend such suits, actions, or proceedings, or *to compromise and settle any suit, claim or proceedings* in which the Trust is interested, and *to discharge the same out of the Trust property and assets;* and they are specifically authorized *to pay* or transfer out of the Trust property or assets all sums of money or property necessary to discharge any judgment or decree rendered against them, or the Trust, together with all court or other costs, including counsel and attorney's fees, and also *to pay out of the Trust property and assets such sums of money,* or transfer appropriate property thereof, for the *purpose of settling,* compromising, or adjusting *any claim or controversy, together with all costs and expenses connected therewith,* and all such expenditures and transfers shall be treated as expenses of executing this Trust." (Emphasis added.)

**29.** *See* Art. VII(i), *supra* note 28.

**30.** The Taxpayer contends the expenditure of trust funds prior to the trustees' approval of the claims violated the terms of 62 O.S.1981 § 310.-1b, which provide:

"The clerk or encumbering officer shall present all properly filed purchase orders to the governing board who shall examine them to determine their legality. The governing board shall consider said purchase orders as claims for payment and shall approve said purchase orders in the amount they determine just and correct."

**31.** We were not inclined to view as conclusive the parties' somewhat ambiguous stipulation that: "7. * * * Since Louis Kindrick became Mayor, all employees and certain public officials of the City have been entitled to certain benefits. The Mayor as a public official is entitled to be offered the health insurance benefits...."

**32.** The terms of the Moore City Charter § 2–3 are:

"Each Councilman shall be paid five dollars ($5.00) for every meeting of the council, regular or special which he attends, but shall not be paid for any other services rendered the city. The mayor or councilman at large shall be paid the sum of three hundred dollars ($300.00) per month for each and every month or any part thereof that he holds office. The councilmen and mayor may be

ter],[33] *which states that the mayor and council members shall be paid a compensation.* Section 10–111 [34] of the Oklahoma Municipal Code [Code] [35] provides that the mayor or other members of the city council *"may not receive any compensation . . .* for any services rendered the city *other than actual expenses."* The charter is in direct conflict with state law.

■ Since the City is a charter municipality, which draws its legal vitality from Article 18 § 3(a), Okl. Const.,[36] and from the implementing Code provisions, § 13–101,[37] the charter has the force of the City's fundamental law.[38] Under the *"home rule"* doctrine,[39] a city charter supersedes conflicting state law on matters of purely municipal concern.[40] Because the *compensation* paid the Mayor and the council members is a matter of municipal concern, the City Charter controls over statutory law.

The next question before us today is whether the City was authorized to pay the contested *health insurance benefits* under the terms of the Moore City Charter § 2–3 [41] and §§ 10–111 [42] and 23–108 [43] of the Code.

■ A conflict exists between a state enactment and a municipal charter or ordinance when both contain either express or implied provisions that are inconsistent or irreconcilable with one another. There is no conflict if one is silent on the issue and the other speaks to it.[44] Section § 23–108 [45] of the Code specifically authorizes health insurance benefits for municipal "officers or employees and their dependents." A "mayor," who is defined by the Code as

reimbursed for expenses incurred in the discharge of their official duties."

**33.** The parties stipulated that there "is no other charter or ordinance provision concerning the compensation or benefits to be paid to councilmen or the mayor."

**34.** The terms of 11 O.S.1981 § 10–111 are: "The mayor or other members of the city council *may not receive any compensation* as such or for any services rendered the city other than actual expenses." (Emphasis added.)

**35.** See 11 O.S.1981 §§ 1–101 et seq.

**36.** The terms of Art. 18 § 3(a), Okl. Const., provide in pertinent part: "Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, *consistent with and subject to the Constitution and laws of this state,* . . . Upon such approval, it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it . . . ." (Emphasis supplied.)

**37.** The provisions of 11 O.S.1981 § 13–101 are: "Any city or town containing a population of two thousand (2,000) inhabitants or more as shown by the latest federal census or other census recognized by the laws of Oklahoma may frame a charter for its own government."

**38.** *Vinson v. Medley,* Okl., 737 P.2d 932, 936 (1987), *citing Lee v. Norick,* Okl., 447 P.2d 1015, 1018 (1968).

**39.** The terms of 11 O.S.1981 § 13–109 provide:

"Whenever a charter is in conflict with any law relating to municipalities in force at the time of adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict."

**40.** *See* 11 O.S.1981 § 13–109, *supra* note 39. *See also Oliver v. City of Tulsa,* Okl., 654 P.2d 607, 609 (1982); *City of Ponca City v. Edwards,* Okl., 460 P.2d 418, 421 (1969); *Goodwin v. Oklahoma City,* 199 Okl. 26, 182 P.2d 762, 764 (1947).

**41.** *Supra* note 32.

**42.** *See supra* note 34.

**43.** The terms of 11 O.S.1981 § 23–108 are: "A municipality may provide hospital and medical benefits, accident, health, and life insurance, or any of the aforesaid, in any company authorized to do business in Oklahoma, for any or all of its *officers* or *employees and their dependents,* whether said officer or employees are engaged in a governmental or non-governmental function of the municipality. The municipality may *pay a portion or all of said premiums from any municipal general funds,* and may deduct from the wages or salary of any such officer or employee, upon written authority signed by the officer or employee, amounts for the *payment of all or any portion of the monthly premium for same. . . ."* (Emphasis added.)

**44.** *Vinson v. Medley, supra* note 38; *Moore v. City of Tulsa,* Okl., 561 P.2d 961, 963 (1977)

**45.** *See supra* note 43.

an "officer" of the municipal government,[46] is hence entitled to these benefits. We find no conflict between the statute dealing with insurance benefits [47] and the municipal charter,[48] which speaks to compensation but is *silent* on the issue of *benefits.* In the absence of negative charter provisions, the specific statute will control over the charter.

 Section § 10–111 is not controlling here. Where a matter is addressed by two statutes—one specific and the other general—the specific statute, which clearly includes the matter in controversy and prescribes a different rule, governs over the general statute.[49] We therefore hold that the *specific* provisions of § 23–108—not the general provisions of § 10–111—are applicable to health insurance benefits afforded by municipalities.

 In addition to § 23–108's health insurance provisions, the Council was statutorily authorized to "make appropriations"

and "regulate . . . all other fiscal affairs of the city." [50] In exercising this power, the City elected to comply with and operate under 11 O.S.1981 §§ 17–201 through 17–216 of the Municipal Budget Act [Act].[51] Once a municipality has selected the Act to govern its budget procedures, the provisions of that Act "shall take precedence over any other state laws applicable to municipal budgets . . . and *supersede any conflicting laws. . . ."* [52] Section 17–213 provides for the classification of revenues and expenditures.[53] One expense category is "[p]ersonal services, which may include . . . *related employee benefits,* paid to any *officer* or employee for services rendered or for employment. Employee *benefits* may include employer contributions to a retirement system, *insurance,* sick leave, terminal pay or similar benefits." [54]

Even if there was an infirmity, the expenditure became validated under the provisions of 11 O.S.1981 § 17–210 [55] upon a taxpayer's failure to file a protest within

**46.** The definition of "Mayor" is provided for in the terms of 11 O.S.1981 § 1–102(4):
"4. 'MAYOR' means the official head of the municipal government as defined by applicable law or charter provision. The mayor is the presiding *officer* of the governing body in all statutory forms of municipal government, and is the chief executive officer in cities having the statutory aldermanic and statutory strong-mayor-council forms of city government;" (Emphasis added.)

**47.** *See* the terms of 11 O.S.1981 § 23–108, *supra* note 43.

**48.** *See* the § 2–3 of the Moore City Charter, *supra* note 32.

**49.** *Southwestern Bell Tel. Co. v. Oklahoma County,* Okl., 618 P.2d 915, 919 (1980); *Ind. Sch. Dist. No. 1 v. Bd of Cty. Com'rs.,* Okl., 674 P.2d 547, 550 (1983).

**50.** The terms of 11 O.S.1981 § 10–106 provide for certain "designated powers" that are vested in the council. We are here concerned with enumerated power (3) which states the council may:
"3. Raise revenue, make appropriations, regulate salaries and wages, and all other fiscal affairs of the city, subject to such limitations as may now or hereafter be imposed by the Oklahoma Constitution and law;"

**51.** The City of Moore, by Resolution No. 118(81), on May 4, 1981, elected to comply with the Municipal Budget Act.

**52.** 11 O.S.1981 § 17–203 (emphasis added).

**53.** The terms of 11 O.S.1981 § 17–213 provide in pertinent part:
"Each fund shall be made up of accounts for classifying revenues and expenditures. Revenues shall be classified separately by source. Expenditures shall be departmentalized within each fund and shall be classified into at least the following accounts:
1. Personal services. . . .; 2. Materials and supplies. . . .; 3. Other services and charges. . . .; 4. Capital outlays;. . . . 5. Debt service. . . ."

**54.** 11 O.S.1981 § 17–213(1) (emphasis added).

**55.** The terms of 11 O.S.1981 § 17–210 provide in part:
"Within fifteen (15) days after the filing of any municipal budget with the State Auditor and Inspector, any taxpayer may file protests against any alleged illegality of the budget in the manner provided by this section and Section 24104 through 24111 of Title 68 of the Oklahoma Statutes. . . . *If no protest is filed* by any taxpayer within the fifteen-day period, *the budget and any appropriations thereof shall be deemed legal and final* until amended by the governing body or the county excise board as authorized by law. . . ." (Emphasis added.)

**900**

the statutory period. Neither the stipulated facts nor other portions of the record show that any protests were filed.

We hold that the appropriations for health insurance benefits to the Mayor and his dependents were in compliance with state statutes and the City's fundamental law.

The trial court's dismissal and its summary judgment in No. 71,423 as well as its judgment in No. 71,422 are accordingly affirmed.

All Justices concur.