**In re INITIATIVE PETITION NO. 332, State Question No. 598.**

No. 66769.

Supreme Court of Oklahoma.

June 27, 1989.

D. Kent Meyers, Carol Kessinger–Kuhn, John W. Swinford, Barbara Snow Gilbert, Gayle L. Barrett, of Crowe & Dunlevy, Oklahoma City, for proponents.

George Miller, Jack S. Dawson, James C. Shaw, Susan Bussey, James H. Lockhart, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for protestant, Richard T. McCartney.

Russell L. Mulinix, John W. Funk, of Hastie and Kirschner, Oklahoma City, for protestant, Charles J. Wooden.

SIMMS, Justice:

By previous order of the Court, Initiative Petition No. 332, State Question No. 598, was held violative of art. 4, section 1 and art. 5, section 55 of the Oklahoma Constitution. Those portions repugnant to the Constitution were held to be such an integral part of the whole Question that they could not be severed from the remainder and the petition was therefore stricken in the entirety.

The proposed question was held to be an unconstitutional delegation of legislative authority in violation of art. 4, § 1, as it placed policy making and appropriation functions with the executive department. It was held violative of art. 5, § 55, in that it authorized the expenditure of state money without the necessary specification as to the amount to be appropriated or the object to which the appropriation should be applied.

■ Protestants correctly analyzed and challenged various portions of sections 300 and 310 as giving the Lottery Commission a "blank check"; allowing it to accrue, budget, spend and distribute the Lottery Fund with almost total discretion and unbridled power. The proposed financing provisions would have allowed the Commission to determine its own expenses and profits, to retain whatever working capital it wished, without limit, and then to transfer funds for "public purposes" without specification of sum or object.

For example, § 310.4 set forth a broad list of expenses which the Commission should meet and then authorized the Commission to incur expenses for any other "necessary" goods and services, without limitation. Section 310.5 permitted the Commission to retain whatever amount of working capital it determined was required

before distributing "net revenues" to the benefit of "public purposes" generally set forth in section 300.3. Those "public purposes" designated for benefit are generally described as "education, economic development and job creation, programs for the elderly, the handicapped and the needy." The Lottery Commission had total discretion to transfer funds to the "proper state accounts" to benefit those broad public purpose categories. The determination of which account was the "proper" state account" to receive funding and how much money would be transferred to those accounts, was placed within the sole discretion of the Commission. While section 300.3 set forth the percentage of "net revenue" to be allocated to certain welfare programs, education and economic development, there was no legislative specification as to which agencies and which programs specifically would benefit and to what extent.

■ This broad and unlimited authority to disburse public funds is clearly fiscal policy making in its most basic form. This is of course a legislative function which may not be delegated to the executive. The proposed Act's appropriation processes are repugnant to art. 4, sec. 1 which divides the government into three separate and distinct departments and provides that neither shall exercise the powers properly belonging to either of the others. While restricted authority such as the power to implement legislative policy and perform administrative details may be delegated, there must be objective guidelines or standards to control the actions of the executive. *Wells v. Childers*, 196 Okl. 353, 165 P.2d 371 (1945); *City of Sand Springs v. Dept. of Public Welfare*, Okl., 608 P.2d 1139 (1980).

Art. 5, sec. 55 vests the function of appropriating public funds exclusively in the legislature and also establishes constitutional specifications of legislative appropriations. It provides:

"No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its

management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

We have held that within the meaning of sec. 55 an appropriation is an authority of the Legislature given at the proper time and in the legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year for a specified object or demand against the State. See, *Menefee v. Askew,* 25 Okl. 623, 107 P. 159, 161 (1910).

Proponents' first line of defense to the challenge to the Act as violative of art. 5, § 55, which is that the provision does not apply to the Lottery Fund at all because the fund is not a state fund, is unpersuasive. Proponents' suggestion was that rather than a state fund, the Lottery Fund should be seen as "trust funds" like the State Insurance Fund, the legal status of which was placed in issue and decided in *Moran v. State, ex rel., Derryberry,* Okl., 534 P.2d 1282 (1975). There we held that the State Insurance Fund, which was created under Workers' Compensation law by the premiums of participating employers to cover the contingency of a claim against the employer or a catastrophe, was to be a trust fund for the benefit of employers and employees, not state funds subject to appropriation. Proponents submitted that before the Lottery Funds were transferred to the "proper state accounts" for the benefit of the public purposes, the Treasurer should be seen as acting as a mere trustee; that these would not be "state funds" and therefore not subject to constitutional fiscal restraints. The Lottery Fund cannot be viewed in the same "trust" light however, as it is in no way similar to the State Insurance Fund. That was a common fund created by and belonging to contributing employers and publicly administered for a single specific public benefit. It was not

intended that the State Insurance Fund should make a profit. However, the Lottery is designed to accrue large sums of money to generate profit so that net revenues can be transferred to other agencies of government.

Protestants are correct that the Lottery fund is quite similar to the Game Protection Fund stricken in *Menefee v. Askew,* supra, as violative of art. 5, sec. 55 for failing to meet the definite sum requirement. In *Menefee,* funds derived from licenses and fines were put into a fund to be used by the Fish & Game Warden to run the department and pay any "necessary" expenses. At his discretion, the remaining unused revenue was to be transferred back to the general revenue fund for the benefit of the state.

As in *Menefee,* the Lottery Act leaves the Commission with the unlimited and unchecked power to decide for itself how much revenue to retain for "necessary" expenses and how much to transfer to other state purposes. Additionally, here the commission has the power to determine the objects to which the money shall be applied.

Proponents are also incorrect in their assertion that the Highway Fund at issue in *Edwards v. Childers,* 102 Okl. 158, 228 P. 472 (1924), more closely resembles the instant situation and that decision should have therefore controlled and resulted in approval here. In *Edwards,* we did determine that the specific sum requirement of art. 5, § 55 was not violated where the entire highway fund was appropriated for legislatively designated special purposes, thereby limiting the executive department to moneys the legislature had ordered expended because the fund was then capable of exhaustion. Proponents' arguments that the Lottery Fund is like the fund in *Edwards* simply because "all the fund" is appropriated to the Commission so that, in proponents' view, the initial appropriation would be unaffected by the subsequent transfer of net profits to proper state funds, misreads *Edwards.* The main teaching of *Edwards,* which is the foundation upon which it is based and upon which

it distinguishes *Menefee*, is the fundamental and absolute division of governmental power, and the exclusion of the executive from the appropriation and disbursement of public funds.

As a matter of historical perspective, the Court in *Edwards* observed that the provisions of art. 5, § 55 exist to curb the power of the monarch to save the people from the prodigality of the King.

The Court observed that an appropriation of public funds to a department of state does not conflict with the specific sum requirement if it leaves no power in the department to use or expand any funds except as the lawmakers reviewed, considered and thereafter determined to allocate.

The Court distinguished *Menefee* based on the Fish and Game Department's discretion to use so much of its revenue producing fund as was "necessary" and to return the unused portion to the general fund. The Highway Fund appropriation did not have that indefinite and therefore unconstitutional quality, because the fund was capable of exhaustion and the department was limited to those funds the legislature ordered expended.

Unlike the Lottery Fund and the Game Fund, the Highway Fund was controlled by the will of the legislature. It was not a revenue producing fund designed to accrue money and no part of it could be transferred to the general fund or other fund. Consequently the highway department could not exercise discretion over funds to the benefit or detriment of other agencies or programs.

The proposed Lottery Act failed to meet both the definite sum requirement and the specified object of the expenditure requirement of Art. 5, § 55.

The Commission's authority to transfer net revenues was clearly not, as argued by proponent, a delegation of administrative "details". Making policy decisions as to the specific sum and object of the receipt of state funds is at the very heart of the legislative appropriation function. They are, for that reason, the requirements of art. 5, § 55.

Addressing the subject of improper delegation of the legislative appropriation process to the executive in *Wells v. Childers*, supra, 165 P.2d at 376, the Court stated:

"... [G]ubernatorially created objects of expenditures would constitute an appropriation, a function exclusively legislative. As a matter of fundamental principle, the Legislature may not create any fund, designate it an appropriation, and delegate determination of the objects of expenditure to any executive or administrative officer at his discretion. So to do not only would violate the Constitution (Art. V, Sec. 55), requiring the distinct specification of the object to which it may be applied; additionally, such legislative authority sought to be delegated would violate Sec. 1, Art. IV, Constitution, by which the government is divided into three separate and distinct departments and in which it is provided that neither shall exercise the powers properly belonging to either of the others."

Initiative Petition No. 332, State Question No. 598, is therefore invalid.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN and SUMMERS, JJ., concur.

ALMA WILSON, Justice, concurring in part, dissenting in part:

I concur with the majority insofar as it rejects those unconstitutional portions of the initiative petition as invalid and without legal sufficiency to be submitted to the people of the State of Oklahoma. Now upon my examination of the petition, however, it is my opinion that a portion of the petition is severable. I dissent to the majority's refusal to submit to the people that portion which is severable and constitutionally may be submitted.

OPALA, Vice Chief Justice, dissenting:

I dissent for the reasons explained by me in Part I of my concurring in result opin-

ion. See, *In Re Initiative Petition 315,* Okl., 649 P.2d 545, 554 (1982).

KAUGER, J., disqualified.