2002 OK 21

**In re INITIATIVE PETITION NO. 366, State Question No. 689.**

**No. 95,070.**

Supreme Court of Oklahoma.

April 2, 2002.

**6.** 75 O.S.1991 §§ 250.1 et seq.

**7.** 75 O.S. Supp.1992 § 318(2).

Matthew F. Stowe, Patton Boggs, Washington, DC, for Proponent Carol Martin.

Ron Kirby, Lawton, OK, Pro Se Proponent.

James C. Thomas, Tulsa, OK, for Protestant, Delilah Christine Gentges.

John E. Parris, Fannie Bates, Norman, OK, for Protestant Fannie Bates.

Neal Leader, Senior Assistant Attorney General, Oklahoma City, OK, for Amicus Curia Attorney General W.A. Drew Edmondson.

Steven M. Presson, Jackson & Presson, Norman, OK, for American Civil Liberties Union of Oklahoma Foundation, American Civil Liberties Union Foundation of Northern California, Inc., Mexican American Legal Defense and Education Fund, Asian American Legal Defense and Educational Fund, Employment Law Center of the Legal Aid Society of San Francisco.

Julian K. Fite, David A. Mullon, Jr., Richard D. Osburn, Cherokee Nation, Tahlequah, OK, for amicus curiae Cherokee Nation.

HODGES, J.

## I.  HISTORY

¶ 1 May 10, 2000, Oklahoma State Senator Carol Martin and Oklahoma State Represen-

tative Ron Kirby (proponents) started a petition drive for Initiative Petition No. 366 [1] to enact a new statute. The proposed statute designates English as Oklahoma's official language; requires all official documents, transactions, proceedings, meetings and publications of the State of Oklahoma and its political subdivisions to be in English only, requires the return to the general revenue fund of all money appropriated or designated for translation or printing materials in a language other than in English, and prohibits all future expenditure of funds for translation services and printing in a language other than English. The petition provides for exceptions for conflicts with the federal constitution, laws, and regulations and with the Oklahoma Constitution. The petition makes an exception for educational institutions subject to rules adopted by the Board of Education and State Board of Regents.

¶ 2 Oklahoma's Attorney General, deeming the ballot title proposed by the proponents to be legally inadequate, submitted a substitute ballot title.[2] A protest to the signatures was lodged and then abandoned. Numerous protests and letters were submitted and have been considered by this Court.[3] The proponents attempted to withdraw Petition No. 366 after it was submitted to the Secretary of State. The motion to withdraw the petition was denied. The matter is now before this Court on the merits. The proponents have declined to submit briefs to this Court.

## II. ISSUES

■ ¶ 3 The issues in this case are: (1) whether this Court should conduct a pre-election review of Petition No. 366, and (2) whether Petition No. 366 is constitutionally flawed. We hold that it is appropriate for this Court to address the constitutionally of the petition and that the petition is constitutionally flawed.

## III. PROPRIETY OF REVIEW

¶ 4 The right of initiative petition and referendum is a right protected by the Oklahoma Constitution and Oklahoma Statutes.[4] This right is not without limitations.[5] This Court has entertained pre-election attacks on initiative petitions to avoid costly and unnecessary elections.[6] As discussed below, Initiative Petition No. 366 is fraught with infirmities. It would be a disservice to the citizens of Oklahoma to submit a petition which could not withstand a constitutional attack to a state-wide vote.[7]

## IV. BACKGROUND

¶ 5 Twenty-two states,[8] as well as a num-

---

1. The full text of the Initiative Petition No. 366, numbered State Question 689, is at Appendix A.

2. Okla. Stat. tit. 34, § 9(D)(a) (1991). The ballot title is attached as Appendix B.

3. The Oklahoma Attorney General's motion to file a brief as amicus curiae was granted. The brief of the American Civil Liberties Union of Oklahoma Foundation, American Civil Liberties Union Foundation of Northern California, Inc., Mexican American Legal Defense and Education Fund, Asian American Legal Defense and Educational Fund, Employment Law Center of the Legal Aid Society of San Francisco and the brief of the Cherokee Nation are accepted as amici curiae briefs.

4. Okla. Const. art. V, § 1, provides:

   [T]he people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

Title 34 of the Oklahoma Statutes addresses initiatives and referendums.

5. *In re Initiative Petition No. 349, State Question No. 642*, 1992 OK 122, ¶ 35, 838 P.2d 1, 12.

6. *Id.*

7. *Id.*

8. Ala. Const. amend. 509; Alaska Stat. §§ 44.12.300–.380 (1998); Ark.Code. Ann. § 1–4–117 (1987); Cal. Const. art. III, § 6; Colo. Const. art. II, § 30(a); Fla. Const. art. II, § 9; Ga.Code Ann. § 50–3–100 (1996); Haw. Const. art. XV, § 49 ("English and Hawaiian shall be the official languages of Hawaii...."); Ill.Rev. Stat. ch. 5, para. 460/20 (1991); Ind.Code § 1–2–10–1 (1995); Ky.Rev.Stat. Ann. § 2.013 (Baldwin 1984); Miss.Rev.Stat. § 3–3–31 (1987); Mont. Code. Ann. § 1–1–510 (1995); Neb. Const. Art. 1, § 27; N.H.Rev.Stat. Ann. § 3–C:1 (1995); N.C. Gen.Stat. § 145–12 (1987); N.D. Cent.Code § 54–02–13 (1987); S.C.Code Ann. § 1–1–696 (1987); S.D. Codified Laws Ann. §§ 1–27–20, 1–27–22 (1995); Tenn.Code Ann. § 4–1–404 (1984);

ber of municipalities,[9] have English only laws. In contrast to Initiative Petition No. 366, most of the laws make English the official language of the governmental entity and are non-prohibitive, brief, and symbolic.[10] Arizona adopted a constitutional provision similar to Petition No. 366.[11] The Arizona provision was labeled as one of the most restrictive state measures.[12] Petition No. 366 is even more restrictive than Arizona's provision. Like the Arizona provision, Petition No. 366 makes exceptions for conflicts with federal law. However, the Arizona provision made exceptions for protection of public health and safety and for the protection of the rights of criminal defendants. Petition No. 366 does not make these exceptions. The Arizona provision was declared unconstitutional by both the Court of Appeals for the Ninth Circuit[13] and the Arizona Supreme Court.[14]

## V. CONSTITUTIONAL IMPLICATIONS

■ ¶ 6 In an apparent attempt to avoid the constitutional infirmaries of the Arizona

provision, Petition No. 366 makes a specific exception for conflicts with the United States and Oklahoma constitutions and with federal statutes and regulations.[15] Petition No. 366 states that it should not be construed to limit the constitutional rights of "any citizen, state employee, private business or corporation. . . ." These two provisions are mere surplusage because a statutory provision that conflicts with either the United States Constitution or the Oklahoma Constitution is unenforceable.[16] In assessing the First Amendment infringements of the Arizona provision, the Arizona Supreme Court and the Ninth Circuit Court of Appeals did not consider the exception for conflicts with federal law as curing the constitutional abridgements.[17]

### A. Free Speech and Right of Petition

¶ 7 We first note that the Oklahoma Constitution is more protective of speech than is the United States Constitution.[18] Article 2,

Va.Code Ann. § 7.1–42 (Michie 1996); Wyo. Stat. § 8–6–101 (1996).

9. *Ruiz v. Hull*, 191 Ariz. 441, 957 P.2d 984, 994 (1998).

10. Ark.Code. Ann. § 1–4–117 (1987) ("(a) The English language shall be the official language of the State of Arkansas. (b) This section shall not prohibit the public schools from performing their duty to provide equal educational opportunities to all children."); Colo. Const. art. II, § 30(a) ("The English language is the official language of the State of Colorado. This section is self executing; however, the General Assembly may enact laws to implement this section."); N.D. Cen. Code § 54–02–13 (1987) ("The English language is the official language of the state of North Dakota.").

11. Ariz. Const. Art. XXVIII. Article 28 was declared unconstitutional in *Ruiz v. Hull*, 191 Ariz. 441, 957 P.2d 984, 994 (1998), and in *Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir.1995) (en banc), *vacated on other grounds AOE v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), *on remand, Yniguez v. AOE*, 118 F.3d 667 (9th Cir.1997).

12. *Ruiz, 957 P.2d at 994.*

13. *Yniguez, 69 F.3d at 920.*

14. *Ruiz*, 957 P.2d at 984.

15. It appears the Arizona Supreme Court and the Ninth Circuit Court of Appeals did not construe the conflict with federal laws exception in the Arizona provision to include a conflict with the United States Constitution. *Ruiz*, 957 P.2d at 984; *Yniguez*, 69 F.3d 920. Because Petition No. 366 is a proposed statutory amendment rather than a proposed constitutional amendment, it is subject to invalidation based on the Oklahoma Constitution as well as the United States Constitution: Okla. Const. art. I, § 1; *Reherman v. Oklahoma Water Resources Bd.*, 1984 OK 12, ¶ 22, 679 P.2d 1296, 1302.

16. *Reherman*, 1984 OK 12 at 22, 679 P.2d at 1302.

17. *Ruiz*, 957 P.2d at 984; *Yniguez*, 69 F.3d 920.

18. Okla. Const. art. 2, § 22; *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶ 13 n. 23, 958 P.2d 128, 138 n. 23. Compare Oklahoma's protections with the First Amendment of the United States Constitution which states: "Congress shall make no law ... abridging the freedom of speech." In our analysis of Oklahoma's Constitution, federal authority is used solely for guidance. Our determination of the validity of Petition No. 366 is premised exclusively upon Oklahoma's Constitution and not upon federal constitutional considerations. *Michigan v. Long*,

section 22 of the Oklahoma Constitution provides:

> Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right: and no law shall be passed to restrain or abridge the liberty of speech or of the press....

Article 2, section 3 of the Oklahoma Constitution provides:

> The people have the right peaceably to assemble for their own good, and to apply to those invested with the power of government for redress of grievances by petition, address, or remonstrance.

■ ¶ 8 In order to determine whether these constitutional provisions have been abridged, it is necessary to ascertain the exact impact of section B of Petition No. 366. Section B of the petition requires "[a]ll official documents, transactions, proceedings, meetings, or publications issued, which are conducted or regulated by, on behalf of, or representing the state and all of its political subdivisions shall be in the English language."

■ ¶ 9 Rules of statutory construction require words be given their plain meaning considering the context.[19] "Official" means "[p]ertaining to an office; invested with the character of an officer; proceeding from, sanctioned by or done by, an officer."[20] An "official act" is "[o]ne done by an officer in his official capacity under color and by virtue of his office."[21] Applying the rules of statutory construction, section B would prohibit all governmental communications, both written and oral, by government employees, elected officials, and citizens, of all words, even those which are of common usage, in any language other than English when conducting state business. This construction of section B is in keeping with the encompassing words of the petition.

■ ¶ 10 By restricting all governmental communications to the English language, section B seeks to prevent citizens of limited English proficiency from effectively communicating with government officials and from receiving, when available, vital information about government. This restriction is prohibited by both sections 3 and 22 of article 2 of the Oklahoma Constitution.

■ ¶ 11 In *Gaylord*, this Court discussed the importance of freedom of speech in the political context.[22] The freedom of speech protected by section 22 and the freedom to petition the government for redress of grievances protected by section 3 are closely related.[23] Protection of these freedoms is an essential part of the right to participate in self-government.[24] Information and meaningful discussion are necessary for a self-governing society.[25] "There should be 'no potential interference' with a meaningful dialogue of ideas concerning self-government; nor should there be a threat of liability that causes self-censorship."[26] These protections are afforded, not only the speaker but also the listener.[27] These rights apply equally to those proficient in the English language and those who are not.[28]

¶ 12 It is difficult to envision a situation where these protections are more necessary than in communications between government officials, whether electees or employees, and citizens. Restricting all governmental communications to English prevents citizens who are of limited English proficiency from effectively communicating with their government. Even with the exceptions for constitutional conflicts, Petition No. 366 would disenfran-

463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

19. *City of Tulsa v. State ex rel. Public Employees Relations Bd.*, 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220.

20. Black's Law Dictionary p. 978. (5th ed.1979).

21. *Id.*

22. *Gaylord Entertainment*, 1998 OK 30, ¶ 13 n. 23, 958 P.2d at 138 n. 23.

23. *Id.* at ¶ 24 n. 52, at 142 n. 52.

24. *Id.* at ¶ 14 n. 24, at 138 n. 4.

25. *Id.* at ¶ 13, at 138.

26. *Id.*

27. *Id.*

28. *See Meyer v. State of Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

chise segments of Oklahoma citizens by interfering with their ability to access vital information necessary for a self-governing society and cause self-censorship by inhibiting communications with government officials. All of this in contravention of the Oklahoma Constitution.

## B. Vagueness

■ ¶ 13 The due process clause of the Oklahoma Constitution requires statutory prohibitions to be clearly defined.[29] Statutory prohibitions which are not clearly defined will be void for vagueness.[30] Laws must afford "[a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that [the person] may act accordingly."[31]

¶ 14 There are several inherent dangers of vague laws. Vague laws "may trap the innocent" by failing to provide fair warning.[32] By failing to provide explicit standards, vague laws delegate basic policy matters to judges and juries for ad hoc resolution resulting in discriminatory enforcement.[33] A vague law restraining speech causes citizens to avoid lawful conduct for fear of entering the forbidden zone.[34] "[A] law which interferes with the right of free speech" is subject to heightened scrutiny[35] because "[t]he threat of sanctions may deter [free speech's] exercise almost as potently as the actual application of sanctions."[36]

¶ 15 Very similar to Petition No. 366 is the classic example of an unconstitutionally vague statute: "It shall be a crime to say anything in public unless the speech is protected by the first and fourteenth amendments."[37] Such a statute is patently vague and will deter constitutionally protected conduct.[38] A vague statute's prohibitions become clear only after "courts [have] proceeded on a case-by-case basis to separate out constitutional from unconstitutional areas of coverage."[39] Because of its vagueness, Petition No. 366 would force citizens to refrain from exercising their right to freedom of speech. Thus, Petition No. 366, if adopted, would unconstitutionally abridge article 2, section 7 of the Oklahoma Constitution.

## C. Non-delegation Doctrine

■ ¶ 16 Section C of Petition No. 366 allows the use of languages other than English in state-supported public schools under rules promulgated by the State Board of Education and the State Board of Regents for Higher Education "to promote the following principles." However, Petition No. 366 fails to provide any principles.

■ ¶ 17 Articles 4 and 5 of the Oklahoma Constitution provide the basis for Oklahoma's non-delegation doctrine. Article 4 addresses the separation of the three branches of government.[40] Article 5, section 1[41] charges the Legislature with policymak-

29. Okla. Const. art. II, § 7, provides:
No person shall be deprived of life, liberty, or property, without due process of law.

30. *Grayned v. City of Rockford*, 408 U.S. 104, 107, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

31. *Id.*

32. *Id.*

33. *Id.*

34. *Id.*

35. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

36. *NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

37. L. Tribe, American Constitutional Law § 12–29, at 1031 (2d ed.1988).

38. *Id.*

39. *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).

40. Article 4, section 1 of the Oklahoma Constitution provides:
The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

41. Article 5, section 1 of the Oklahoma Constitution provides:
The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives....

ing for the state.[42] The non-delegation doctrine prevents the Legislature from abdicating its policy-making role by delegating its authority to an agency.[43] The Legislature "must establish its policies and set out definite standards for the exercise of any agency's rulemaking power."[44] The non-delegation doctrine applies to enactments by the people in the same manner it applies to enactments by the Legislature.

¶ 18 Petition No. 366's omission of any principles leaves the fundamental policy-making function to the unbridled discretion of the State Board of Education and the Board of Regents for Higher Education.[45] This delegation of legislative authority would contravene articles 4 and 5 of the Oklahoma Constitution making Petition No. 366 unconstitutional if it were to be adopted.

## VI. CONCLUSION

¶ 19 Initiative Petition No. 366 is properly before this Court for substantive review. Petition No. 366 contravenes the Oklahoma Constitution. The petition unconstitutionally infringes upon the freedom of speech,[46] upon the freedom to petition the government for redress,[47] and upon the Legislature's policy-making function.[48] Thus, the Initiative Petition No. 366 is legally insufficient for submission to a vote of the people of Oklahoma.

¶ 20 In finding Initiative Petition No. 366 is constitutionally infirm, we are not requiring any Oklahoma governmental entity to provide services in languages other than English beyond what is presently required by law. The issues before this Court do not include the extent that government must accommodate non-English proficient citizens and residents. Further, we do not express the propriety of laws promoting English as an official language. That is not the duty of this Court. We hold only that the restrictions Petition No. 366 places on constitutionally protected rights runs afoul of the Oklahoma Constitution.[49]

INITIATIVE PETITION NO. 366 IS DECLARED LEGALLY INSUFFICIENT FOR SUBMISSION TO A VOTE OF THE PEOPLE OF OKLAHOMA.

¶ 21 HARGRAVE, C.J., WATT, V.C.J., LAVENDER, KAUGER, BOUDREAU, WINCHESTER, JJ., concur.

¶ 22 OPALA, J., dissents.

¶ 23 SUMMERS, J. not participating.

## APPENDIX A

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

Section 1. NEW LAW. A new section of law to be codified in the Oklahoma Statutes as Section 40 of title 24 unless there is a duplication created in numbering to read as follows:

42. *Democratic Party of Okla. v. Estep,* 1982 OK 106, ¶ 16 n. 25, 652 P.2d 271, 277 n. 25.

43. *Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge Number 188 v. Board of County Comm's of Tulsa County,* 2000 OK 2, ¶ 9, 995 P.2d 1124, 1128.

44. *Estep,* 1982 OK 106 at ¶ 16, 652 P.2d at 277–78.

45. *See id.*

46. Okla. Const. art. II, § 22.

47. *Id.* at § 3.

48. *Id.* at art. IV, § 1; *id.* art. V, § 1.

49. The proponents have submitted two cases from other jurisdictions in support of their position: (1) *Alexander v. Sandoval,* 531 U.S. 1049, 121 S.Ct. 652, 148 L.Ed.2d 556 (2001), and (2) *Anderson v. Utah,* Slip OP. NO. 000909680 (D.Utah 2001). In *Alexander v. Sandoval,* the United States Supreme Court held administering a driver's license examination only in the English language did not violate federal regulations prohibiting fund recipients from using discriminatory methods. *Alexander* does not support proponents position. *Anderson v. Utah* is a state district court case, reported by slip opinion, upholding Utah's "Official English" act against a constitutional challenge. The Utah Supreme Court had previously held that the purpose of the act was "to declare English to be the official language for the conduct of government business in Utah." *Stavros v. Office of Legislative Research and General Counsel,* 15 P.3d 1013, 1018 (Utah 2000). At issue in *Stavros* was the ballot title, not the constitutionality of the act. We are applying Oklahoma constitutional jurisprudence, the analysis by the Court in *Anderson* is inapplicable in this action.

A.   In order to encourage every citizen of this state to become more proficient in the English language, thereby facilitating participation in the economic, political, and cultural activities of this state and of the United States, the English language is hereby declared to be the official language of the State of Oklahoma.

B.   Except as otherwise provided in subsection C of this section, the English language shall be the language of the government.   All official documents, transactions, proceedings, meetings. or publications issued, which are conducted or regulated by, on behalf of, or representing the state and all of its political subdivisions shall be in the English language.

C.   Languages other than English may be used when required by:

1.   The United States Constitution, the Oklahoma Constitution, federal laws, or federal regulations.

2.   Any state supported common school or institution of higher education of this state subject to rules governing the use of foreign languages in such public education systems adopted by the State Board of Education of (sic) Oklahoma State Board of Regents for Higher Education pursuant to the provisions of the Administrative Procedures Act to promote the following principles.

D.   On and after January 1, 2001, any state moneys appropriated or designated for use to print or translate reading materials, providing of services or information in a language other than English shall not be expended for such purposes.   The director, agency, board, or commission which has state moneys appropriated for such purposes shall:

1.   Notify the Office of State Finance of the total amount of all such moneys under their control;

2.   Follow procedures established by the Director of State Finance to immediately return all such moneys to the General Revenue Fund.

E.   At the beginning of the Second Session of the 47th Oklahoma Legislature specifying the total amount of these moneys returned and available for reappropriation or redesignation.   All moneys received pursuant to the provisions of subsection D of this section may be used to fund English As A Second Language programs.

F.   The provisions of this Section shall not be construed to limit the ability of any citizen, state employee, private business, or corporation to exercise their rights pursuant to:

1.   The Constitution of the United States of America, or

2.   The Constitution of the State of Oklahoma.

### APPENDIX B

This measure adds a new law to Oklahoma statutes.   Under the measure the State could not spend funds to:

3.   Print or translate reading material into a language other than English.

4.   Provide services in a language other than English

5.   Provide information in a language other than English.

The State would have to return any monies provided for these purposes to the State General Revenue Fund.

   The measure makes English the official language of the State and State government.   The measure requires all official State documents to be in English.   It requires the State to conduct all its business in English.   The same requirements would apply to counties, municipalities, and school districts.   The State and these subdivisions could use languages other than English when required by:

1.   The United States or State Constitution, or

2.   Federal law or regulation.

Schools could also use other languages under rules approved by the Legislature.

SHALL THE PROPOSAL BE APPROVED:
FOR THE PROPOSAL—YES          _____
AGAINST THE PROPOSAL—NO     _____

OPALA, J., dissenting from the court's pronouncement.

¶ 1 The court declares today that the initiative petition under consideration—which would **prohibit** (a) **the use of non-English languages** in state government meetings, documents, transactions proceedings and publications *as well as* (b) **the expenditure of funds** for translating into, as well as printing in, non-English languages—does not qualify for submission to a vote of the electorate because it offends several state constitutional norms.

¶ 2 I cannot join the court in so disposing of the controversy. *I would declare this unchampioned measure unfit for submission because its prosecution for clearance stands abandoned.* This case **ceased to present a lively controversy** when the proponents requested "leave to withdraw" their quest for the initiative's submission to a vote and found themselves in default for want of timely briefing. Today's pronouncement raises to new heights the aberrational enormity of this State's constitutional jurisprudence. It subjects to fundamental-law scrutiny a *people-proposed change* in the law which no longer has a live champion and does not present a justiciable controversy for judicial resolution. In other words, judicial review is applied to a **hopelessly lifeless initiative petition** that could never reach submission stage because nobody advocates its passage for further processing as potential law. The judicial testing accorded today has earlier stood reserved for viable initiative petitions *actively pressed for submission to a vote*, not for a dead-end measure.[1]

¶ 3 I would counsel the court to pronounce—as a rule of law to be applied prospectively—that when proponents in a pending cause refuse further to prosecute (and defend against a protest) an initiative that stands under a constitutional challenge, the court should give all interested persons **due notice** and afford them the **opportunity** to pursue the **quest** sought to be withdrawn.

¶ 4 There is another basic flaw in the process invoked today. Even if this were a lively controversy, appellate courts must not make constitutional pronouncements in advance of strict necessity. There is here no necessity for the rush to judgment upon this lifeless dispute. Lastly, because of my long-pressed opposition to the court's departure from *Threadgill's*[2] teachings by allowing pre-submission testing of initiative measures for constitutional orthodoxy, I would refrain from giving this petition that kind of scrutiny. There is simply no earthly need for making a ponderous pronouncement in a patently nonadversarial context. A declaration of mootness and abandonment, coupled with a default for want of timely briefing, should suffice.

## I

## PROPONENTS' PUBLIC–LAW CLAIM FOR SUBMISSION OF AN INITIATIVE MEASURE TO A VOTE CANNOT BE WITHDRAWN AFTER THE PETITIONS HAVE BEEN PRESENTED TO THE SECRETARY OF STATE

¶ 5 I continue to espouse my earlier vote[3] against granting proponents leave to withdraw the initiative from judicial process that

---

1. See, e.g., *In re Initiative Petition No. 364, State Question No. 673*, 1996 OK 129, 930 P.2d 186; *In re Initiative Petition No. 362, State Question 669*, 1995 OK 77, 899 P.2d 1145; *In re Initiative Petition No. 349, State Question No. 642*, 1992 OK 122, 838 P.2d 1; *In re Initiative Petition No. 348, State Question No. 640*, 1991 OK 110, 820 P.2d 772; *In re Initiative Petition No. 347, State Question No. 639*, 1991 OK 55, 813 P.2d 1019; *In re Initiative Petition No. 341, State Question No. 627*, 1990 OK 53, 796 P.2d 267; *In re Initiative Petition No. 332*, 1989 OK 93, 776 P.2d 556; *In re Initiative Petition No. 315, State Question No. 553*, 1982 OK 15, 649 P.2d 545; *In re Supreme Court Adjudication, Etc.*, 1975 OK 36, 534 P.2d 3.

2. *Threadgill v. Cross*, 1910 OK 165, 109 P. 558.

3. This court's 16 April 2001 order states in pertinent part:

*ORDER*

Upon the unexcused failure of the proponents to file an answer brief as directed by this Court's order of October 5, 2000, this matter is ordered standing submitted for adjudication on the protestants' briefs alone. The motion of proponent Carol Martin to withdraw the petition is denied. *In re Initiative Petition No. 364*, 1996 OK 129, 930 P.2d 186 .... **[Opala, J., concurs in result].**

is pending upon their adversaries' protest. Before a petition is filed with the Secretary of State proponents have complete control over the measure. They may withdraw it at any time.[4] In the post-filing stage, the proponents cannot be treated as a Hohfeldian plaintiff[5] (*dominus litis*[6]). At that point they become participants· in the **public-law process** with no cognizable legal interest in the petition's prosecution.[7] **This measure clearly cannot be withdrawn on the proponents' withdrawal attempt alone.**[8]

4. The pertinent terms of 34 O.S.Supp.1992 § 8 (A) are:

   A. * * * The proponents· of a referendum or an initiative petition, any time before the final submission of signatures, may withdraw the referendum or initiative petition upon written notification to the Secretary of State.

5. A Hohfeldian plaintiff is a legal entity seeking a judicial determination that as a party litigant it has "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. *Macy v. Board of County Com'rs*, 1999 OK 53, ¶ 12, 986 P.2d 1130, 1137–38; *Toxic Waste Impact Group, Inc. v. Leavitt*, 1994 OK 148, 890 P.2d 906, 914 (Opala, J., concurring); *Fowler v. Bailey*, 1992 OK 160, 844 P.2d 141, 150 (Opala, C.J., concurring); Louis L. Jaffe, The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff, 116 U.Pa.L.Rev. 1033 (1968).

6. Literally translated, *dominus litis* means master of the suit, *i.e.*, one who by law is entitled to manage and control the litigation to the exclusion of others. BLACK'S LAW DICTIONARY 437 (5th ed.1979); *Davis v. Davis*, 1985 OK 85, 708 P.2d 1102, 1107 (one who is "placed in charge of prosecuting" the case is *"dominus litis"*); *Ex parte Lewis*, 85 Okl. Cr. 322, 188 P.2d 367, 380 (1947); *Virginia Electric & Power Co. v. Bowers*, 181 Va. 542, 25 S.E.2d 361, 363 (1943).

7. The initiative petition's proponents stand in this court as non-Hohfeldian plaintiffs. One who stands in that status sues to secure judicial relief that would benefit other persons or the community as a whole. *Toxic Waste, supra* note 5 at 914 (Opala, J., concurring). There are many examples of non-Hohfeldian plaintiffs whose prosecution in behalf of others is authorized by the common law: (*l*) the *qui tam* **plaintiff**—one who sues primarily to benefit a public entity—is typically non-Hohfeldian; *State ex rel. Trimble v. City of Moore*, 1991 OK 97, 818 P.2d 889, 894; see *Flast v. Cohen*, 392 U.S. 83, 120, 88 S.Ct. 1942, 1963, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Kenneth E. Scott, *Standing in the Supreme Court—A Functional Analysis*, 86 Harv.L.Rev. 645, 660–662 n.1 (1973); Davis, *Standing: Taxpayers and Others*, 35 U.Chi.L.Rev. 601, 604–607

## II

## THE ABANDONED INITIATIVE MEASURE LOST ITS JUSTICIABLE QUALITY

¶ 6 Judicial cognizance cannot be invoked by pressing for resolution a nonjusticiable controversy—one that presents nothing more than an **academic, abstract, hypothetical** or **moot** issue.[9] Mootness is a state or condition which prevents the appellate court from

(1968); see also *Sierra Club v. Morton*, 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 1364–1365, 31 L.Ed.2d 636 (1972); *Clark v. Valeo*, 559. F.2d 642, 675 (D.C.Cir.1977); **(2) in a stockholder's derivative suit** the plaintiff stands in the very same category as· a *qui tam* plaintiff. *Warren v. Century Bankcorporation, Inc.*, 1987 OK 14, 741 P.2d 846, 847, 853; **(3) in actions by bailee** for recovery of damage to bailed personalty, the bailee may press a claim for conversion of, or injury to, the chattel, though ownership of the damaged or lost chattel remains in the bailor; *Hare v. Fuller*, 7 Ala. 717 (1845); *Montgomery Gas–Light Co. v. Montgomery E. Ry. Co.*, 86 Ala. 372, 5 So. 735 (1889); *Associates Discount Corp. v. Gillineau*, 322 Mass. 490, 78 N.E.2d 192, 193 (1948); Atkinson, *The Real Party In Interest Rule: A Plea for Its Abolition*, 32 N.Y.U.L.Rev. 926, 949 (1957); **(4) actions** for recovery **in behalf of an underage child**. *Knowles v. Tripledee Drilling Co., Inc.*, 1989 OK 40, 771 P.2d 208.

8. My April 16 vote (concurring in result, *supra* note 3) is entirely consistent with the position I take today. While I still **concur in denying** the proponents' motion to withdraw the petition and *in effecting* final disposition of this cause by **adjudication,** I do not favor a dismissal upon proponents' quest ·to withdraw their petition. The form of **adjudication** I press for is that of *declaring the initiative petition abandoned and its proponents in default for want of a timely brief* (*see* Part II *infra*). An "adjudication" is distinguishable from a judicial disposition that would effect the proceeding's termination by dismissal upon proponents' motion to withdraw the petition from submission to a vote.

9. A dispute ceases to present a lively "case or controversy" when the tendered issues are abstract, academic, hypothetical or have become moot. *Hughey v. Grand River Dam Authority*, 1995 OK 56, 897 P.2d 1138, 1143; *Northeast Okl. Elec. v. Corporation Comm'n*, 1991 OK 28, 808 P.2d 680, 683; *Westinghouse Elec. Co-op., Inc. v. Grand River Dam Auth.*, 1986 OK 20, ¶ 21, 720 P.2d 713, 718; *Rogers v. Excise Bd. of Greer County*, 1984 OK 95, ¶ 15, 701 P.2d 754, 761;. *Lawrence v. Cleveland County Home Loan Auth.*, 1981 OK 28, 626 P.2d 314, 315; *Edwards v.*

rendering effective relief.[10] This court may address only viable, lively disputes.[11] Foisting a sentence of nullity upon a lifeless measure is but a judicial exercise in futility and supererogation.

¶ 7 After its **voluntary abandonment** [12] by the proponents' withdrawal request, the initiative in contest must be treated as no longer justiciable. While the proponents' claim for the measure's submission cannot be withdrawn at their request, there is here no legal barrier to (a) *declaring* the initiative **mooted** and **abandoned** because, during the twelve-month period between the proponents' request to withdraw the petition and today's pronouncement, no one from the proponents' side of the controversy has come forth to prosecute the measure and (b) *declaring* the proponents to stand in **default** for want of timely briefing.

Hanna Lumber Co., 1966 OK 20, 415 P.2d 980, 981; *Westgate Oil Co. v. Refiners Production Co.*, 1935 OK 548, 44 P.2d 993, 994; *Payne v. Jones*, 1944 OK 86, 146 P.2d 113, 116; *Wallace v. McClendon*, 1930 OK 305, ¶ 3, 289 P. 354. See also *Application of Goodwin*, 1979 OK 106, 597 P.2d 762, 765 n. 8.

10. *Morton v. Adair County Excise Bd.*, 1989 OK 174, 780 P.2d 707, 711; *Rogers, supra* note 9 at 761.

11. *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977); *DeFunis v. Odegaard*, 416 U.S. 312, 316–317, 94 S.Ct. 1704, 1705–1706, 40 L.Ed.2d 164 (1974); *Park View Hospital Trust Auth. v. State of Oklahoma ex rel. Dept. of Labor*, 1996 OK 108, 925 P.2d 541, 544 (Opala, J., concurring in judgment).

12. *See in this connection Shelton v. Lambert*, 1965 OK 28, ¶ 6, 399 P.2d 467, 469 ("The withdrawal or **dismissal of a protest** to an initiative measure is in effect its **abandonment** within the meaning of 34 O.S.1961 § 8. Upon such withdrawal the protest is treated as abandoned subject to the right of 'any other citizen' to revive it within five days from the abandonment."). Likewise, a proponent's attempt to withdraw an initiative measure should be treated as an *abandonment* of the petition.

13. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949) (a class representative is a fiduciary for absent class members); *In re Oxford Health*

**III**

**NOTICE OF PROPONENTS' FAILURE TO PROSECUTE AN INITIATIVE MEASURE IS THE SIGNATORIES' DUE**

¶ 8 Proponents, *qua* trustees of a petition's signatures, are under a duty to prosecute (and defend against the protests) an initiative measure on the signatories' behalf. Their role in the process is akin to that of a class representative who voluntarily assumes a fiduciary obligation toward the class. The latter may not be abandoned at will if prejudice to the class would likely follow.[13] The court is charged with protecting the class members who, through their forensic absence, are unable to protect themselves.[14] In the pursuit of an initiative measure the signatories' rights (*qua* legislators) [15] would clearly be prejudiced by (a) proponents' abandonment of their quest *sans* notice to the signatories

*Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y.1998). A class action may not be voluntarily dismissed by the named plaintiffs without the court's approval and notice of the proposed dismissal to all members of the class in whatever manner the court directs. 12 O.S.2001 § 2023 (D) and (E); Fed.R.Civ.P. 23(e); *Blanchard v. EdgeMmark Financial Corp.*, 175 F.R.D. 293, 298–99 (N.D.Ill.1997); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1305 (4th Cir.1978).

14. In order to carry out its role as guardian of the absent class members' interests, the court has the power and the duty, as set forth in 12 O.S. 2001 § 2023 (D) and (E), to ensure that the class representative and class counsel do nothing to compromise or otherwise prejudice the interests of those whom they have undertaken to represent. See also Fed.R.Civ.P. 23(d) and (e); *Blanchard, supra* note 13 at 298–99, citing MANUAL FOR COMPLEX LITIGATION (Third) § 30 (1995).

15. The proponents of an initiative measure and the petition's signatories act in the capacity of legislators. *In re Initiative Petition No. 23, State Question No. 38*, 1912 OK 611, 127 P. 862, 866, the court observes that "[p]eople interested as the circulators of ... [initiative] petitions, and the others who sign them, are acting in the capacity of legislators. They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity...." *See also Brock v. The Honorable Donald D. Thompson*, 1997 OK 127, ¶ 12, 948 P.2d 279, 286.

and without the opportunity to pursue further their interest in the measure **and** (b) the court's judicial condemnation of the initiative as impermissible.

¶ 9 I would counsel that in all future instances of a measure's mid-stream withdrawal by its proponents the court (a) **give notice by publication** (and by other mandatory means) to all persons known to be interested **in the measure,** (b) which **would advise them** that the proponents have withdrawn from the initiative's prosecution (or defense), and (c) would **give the interested persons** adequate opportunity to pursue the pending cause to its completion.[16] If someone with a viable interest should come forth, the proceeding could then be reinstated as an active cause.[17]

---

16. **I do not counsel for additional notice-giving in this case** but rather wish to **foreshadow** a needed procedural change in processing initiative petitions after the proponents' withdrawal or abandonment. *Harry R. Carlile Trust v. Cotton Petroleum,* 1986 OK 16, 732 P.2d 438, 447–448 n. 46 (notice can be mandated by a pronouncement that is given prospective effect).

17. The adoption of my proposed procedure would be consistent with those statutory requirements that call for this court to adopt rules governing challenges during the initiative (or referendum) process. 34 O.S.Supp.1992 § 8 (E). If the applicable procedure is not set forth in either § 8 or Rule 1.194, Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, App. 1, this court may utilize any "procedure that conforms to federal and state constitutional due process requirements." *In re Initiative Petition No. 365, State Question No. 687,* 2000 OK 85, ¶ 2, 14 P.3d 545, 546.

The terms of 34 O.S.Supp.1992 § 8 (E) are:

E. Upon the filing of an objection to the count, the Supreme Court shall resolve the objection with dispatch. The Supreme Court shall adopt rules to govern proceedings to apply to the challenge of a measure on the grounds that the proponents failed to gather sufficient signatures.

The terms of Rule 1.194 are:

Proceedings in the Supreme Court to determine protests or objections to initiative and referendum petitions shall be commenced and proceed in accordance with the procedures set out in 34 O.S.Supp.1992 § 8.

The proceeding shall be treated as an original action and the parties shall be afforded a trial

## IV

## EVEN IF THIS CAUSE WERE A LIVELY CONTROVERSY, CONSTITUTIONAL ISSUES ARE NOT TO BE DECIDED IN ADVANCE OF STRICT NECESSITY

¶ 10 Today's pronouncement clearly violates the prudential bar of restraint which commands that constitutional issues not be resolved in advance of strict necessity.[18] No necessity exists here for resolution of the constitutional content-based challenges to an **abandoned** and **lifeless** nitiative measure.

¶ 11 **No lively controversy is present here** in which antagonistic adversaries press for testing a legal norm's validity against the backdrop of facts that are forensically unfolded **after** the offending measure has come to be applied as law.[19] Where there is no forensic scenario in the context of which challenged law is to be enforced, courts should not *in vacuo*[20] assess the attacked norm's

---

de novo. *In re Initiative Petition 281, State Ques. No. 441,* Okl.,[1967 OK 230] 434 P.2d 941. If factual issues are raised, the Court may assign the matter to a referee.

The Court may issue directions when the procedure is not set out in 34 O.S.Supp.1992 § 8, in this Rule, or in Part VI of these Rules.

18. The prudential rule of necessity, adhered to by all state and federal courts, holds that constitutional issues must not be resolved in advance of strict necessity. *In re Initiative Petition No. 363, State Question No. 672,* 1996 OK 122, 927 P.2d 558, 565; *In re Initiative Petition No. 347, supra* note 1 at 1037 (Opala, C.J., concurring); *Smith v. Westinghouse Elec. Corp.,* 1987 OK 3, 732 P.2d 466, 467 n. 3; *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). *See also Schwartz v. Diehl,* 1997 OK 115, 568 P.2d 280, 283; *Dablemont v. State Dept. of Public Safety,* 1975 OK 162, 543 P.2d 563, 564.

19. The pertinent provisions of Art. 5, § 3, Okl. Const., are:

* * * Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article.

20. *Smith, supra* note 18, at 467.

constitutional soundness. I would not, as the court does today, reach for settlement the protestants' premature content-based constitutional challenges to a lifeless measure.

## V

### THREADGILL v. CROSS [21]

¶ 12 Nor would I today undertake to test the validity of this measure's content before its enactment as law by a vote of the people. My commitment to the undiluted force of *Threadgill v. Cross* [22] continues with undiminished fervor.[23] *Threadgill* teaches that conformity of a measure's content to the commands of the Constitution—state and federal—may not be judicially examined in advance of the initiative's adoption as law. Pre-enactment review of a measure's fundamental-law conformity should be confined to fatally vitiating infirmities in the initiative process itself. The electorate's effort at legislating directly must not be hindered by pre-submission attacks other than those which target the petition's lack of compliance with some *sine qua non* prerequisite for judicial clearance in order to achieve the measure's submission to a vote of the people.[24]

## VI

### SUMMARY

¶ 13 The initiative measure in judicial process here cannot be withdrawn on proponents' request. This cause is a public-law controversy over which proponents have no control after the petition's filing. No legal impediment is present here to this court's (a) *declaring* the measure *mooted and voluntarily abandoned* because, during the *period* between the proponents' request to withdraw the measure from submission and today's pronouncement, no one has come forth to prosecute (and defend against the protest) the petition and (b) *declaring* the proponents to stand in default for want of timely briefing.

¶ 14 The court's commitment to pre-enactment constitutional scrutiny of initiative measures reaches a **new level of aberrational excess.** Today's pronouncement impermissibly injects vitality into a lifeless, unchampioned and utterly abandoned initiative petition with a zeal reminiscent of a roving commission rushing to judgment on abstract grievances.

¶ 15 I also press my counsel that in the future, when proponents refuse to prosecute a challenged initiative, the court give all interested persons adequate notice and opportunity to pursue the quest to its completion.

¶ 16 Because of my continued and unswerving commitment to the teachings of *Threadgill,* [25] I must vigorously oppose subjecting any measure to constitutional testing in advance of its enactment into law. Aside from other flaws, today's pronouncement clearly violates the prudential bar of self-restraint from entertaining constitutional challenges in advance of strict necessity.

**21.** *Supra* note 2.

**22.** *Id.*

**23.** My unswerving commitment to *Threadgill, supra* note 2, is documented in several reported decisions. *See In re Initiative Petition No. 349, supra* note 1 at 18 (Opala, C.J., dissenting); *In re Initiative Petition No. 348, supra* note 1 at 781 (Opala, C.J., concurring in result); *In re Initiative Petition No. 347, supra* note 1, at 1037 (Opala, C.J., concurring); *In re Initiative Petition No. 341, supra* note 1 at 275 (Opala, V.C.J., concurring in result); *In re Initiative Petition No. 317, State Question No. 556,* 1982 OK 78, 648 P.2d 1207, 1222 (Opala, J., concurring in the judgment); *In re Initiative Petition No. 315, supra* note 1 at 554–555 (Opala, J., concurring in result); In re Initiative Petition No. 349 (No. 76,-437, February 20, 1991) (Opala, C.J., concurring in part and dissenting in part) (unpublished opinion).

**24.** For an initiative to pass the threshold test it must (a) be in substantial compliance with the *sine qua non* procedural requirements for submission, (b) address but a single subject (*In re Initiative Petition No. 344, State Question No. 630,* 1990 OK 75, 797 P.2d 326, 330; *In re Initiative Petition No. 342, State Question 628,* 1990 OK 76, 797 P.2d 331, 333) and (c) embrace content appropriate for lawmaking by the people (*In re Supreme Court Adjudication, Etc., supra* note 1); see also in this connection *In re Initiative Petition No. 347, supra* note 1 (Opala, C.J., concurring).

**25.** *Supra* note 2.