Dear Executive Director DeLaughter,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the statutory mandate for the Office of Juvenile Affairs ("OJA") to use existing community at-risk service providers in the newly-implemented Medicaid organized health care delivery system mean the providers in the new delivery system are limited to the actual service providers being used by OJA on the effective date of the new legislation?
 2. May OJA restrict its providers of rehabilitative services to existing community at-risk service providers in a Medicaid organized health care delivery system without violating the competitive bidding act?
 3. May OJA consult with the Oklahoma Association of Youth Services in the development of a Medicaid organized health care delivery system in which providers of services will be restricted to association member agencies?
 4. Does the mandate contained in the appropriation bill, 2003 Okla. Sess. Laws ch. 423, § 3, expire at the end of the fiscal year?
 I. Introduction
¶ 1 The Office of Juvenile Affairs ("OJA") was created by the Oklahoma Legislature July 1, 1994. 10 O.S. 2001, § 7302-2.2[10-7302-2.2](A). The Legislature created within OJA the Department of Juvenile Justice and charged that department with being responsible for "programs and services for juveniles alleged or adjudicated to be delinquent or in need of supervision." Id. § 7302-2.2(A)(1). Effective July 1, 1995, a number of programs or divisions were transferred, along with funding allocations, from the Department of Human Services to the Department of Juvenile Justice. Id. § 7302-3.1(E). As "planner and coordinator for juvenile justice and delinquency prevention services," the Department of Juvenile Justice is statutorily authorized to "enter into agreements for the establishment and maintenance of community-based prevention and diversionary youth services." Id. § 7302-3.3. This includes entering into financial agreements with "federal, state and local agencies or entities of government, or with any private agency, for juvenile delinquency prevention programs and juvenile treatment programs." Id. § 7302-3.4.
¶ 2 In your letter you stated that current services are being provided through contracts with "individual private, non-profit youth services agencies." Letter from Richard DeLaughter, Executive Director, Office of Juvenile Affairs, to Drew Edmondson, Attorney General of Oklahoma (Aug. 8, 2003) (on file with the Attorney General's Office). These agencies are part of a network of community at-risk service providers which are part of the Oklahoma Association of Youth Services, a private, non-profit organization consisting of 41 youth service agency members. See10 O.S. Supp. 2003, 7302-3.6a(A).
¶ 3 The Legislature added new responsibilities to OJA in the 2003 legislative session with the passage of an appropriation bill requiring the implementation of a Medicaid organized health care delivery system to provide rehabilitative services to juveniles. 2003 Okla. Sess. Laws ch. 423, § 3. The appropriation bill requires OJA to implement a Medicaid organized health care delivery system and to use the existing service providers to deliver rehabilitative services under the new Medicaid system.Id. The bill, which was clearly delineated as an appropriation bill for OJA (see id.), appropriates certain monies, and requires OJA to budget the funds for the fiscal year ending June 30, 2004, in certain categories and amounts. 2003 Okla. Sess. Laws ch. 423, § 2. At Section 3, the bill specifically provides:
 During the fiscal year beginning July 1, 2003, the Office of Juvenile Affairs shall implement a Medicaid organized health care delivery system[1] to provide rehabilitation services to juveniles. The system shall be developed in consultation with the Oklahoma Health Care Authority and Oklahoma Association of Youth Services. The new system shall use the existing Community At-risk Services (CARS) program funding. Existing CARS service providers shall be used as the delivery system providers. The CARS system providers shall be required to provide performance-based outcome and quality assurance data.
2003 Okla. Sess. Laws ch. 423, § 3[2] (footnote added).
 II. OJA Is Required To Use Providers From The Existing Network Of Community At-Risk Service Providers To Provide Services In The New Medicaid Organized Health Care Delivery System, But Is Not Limited To Using Only the Actual Providers Rendering Services On The Effective Date Of The New Legislation.
¶ 4 You first ask whether the mandate for OJA to use "existing CARS service providers" in the new Medicaid program means that the providers eligible to be used in the Medicaid program are limited to the actual community at-risk service providers which were being used by OJA in its juvenile rehabilitative program on the effective date of the new appropriation bill. See
2003 Okla. Sess. Laws ch. 423, § 3. As previously mentioned, OJA is currently using organizations who are designated as Youth Services Agency providers to provide rehabilitative services.[3] OJA, through its Department of Juvenile Justice, has the statutory authority to designate certain providers as Youth Services Agencies based on the criteria set forth at 10 O.S. Supp. 2003, § 7302-3.6a[10-7302-3.6a](A), (B). OJA has implemented administrative rules for designation of providers as Youth Services Agencies, establishing additional criteria for designation, providing for a written application process, implementing a peer review process, and instituting an appeal process and administrative hearing process for those agencies whose designation is terminated. See OAC 377:15-1-3 — 377:15-1-6
(1997).
¶ 5 The new mandate for OJA to implement a Medicaid organized health care delivery system, using providers from the community at-risk service provider system, shows the Legislature's intent that the existing delivery system be carried over to the new Medicaid system. This mandate does not require that OJA use only those actual providers who were being used by OJA on the effective date of the new appropriation bill, but does require the use of providers who are, or who may become, part of the network of health care providers who meet the criteria to be designated as Youth Services Agencies.
¶ 6 Under the current administrative rules, an agency wishing to be considered as a designated "Youth Services Agency," shall make written application to OJA. OAC 377:15-1-3 (1997). If an agency's request for designation as a Youth Services Agency is denied, that agency shall have the opportunity for an appeal hearing and, when necessary, an administrative hearing. OAC377:15-1-4(c) (1997). To remain a designated "Youth Services Agency," a peer review is conducted every two years. OAC377:15-1-5(a) (1997). The Deputy Director of OJA may terminate an agency's designation as a Youth Services Agency based on the criteria in Section 7302-3.6(D) of Title 10, or other good cause.Id. Any agency whose designation is being terminated has the right to an appeal and, when necessary, an administrative hearing. OAC 377:15-1-6(a) (1997).
¶ 7 Under these provisions, an individual organization or an agency may be a provider in the existing system at one time and not another, depending upon whether the organization or agency applies to be designated as a Youth Services Agency, and whether the criteria set forth by statute and administrative rules are met. The context in which the Legislature referred to "[e]xisting CARS service providers" shows the Legislature's intent that OJA, in implementing the new Medicaid delivery system, is to use its existing network of providers. The focus is not on the actual providers who were part of the existing system at a given time, but on the current system which is in place.
¶ 8 The significance of the appropriation bill is the authorization for the expenditure of funds to provide Medicaid-compensable services to Oklahoma's youth. In implementing the Medicaid system, OJA is required to use the existing network of service providers. This network of available providers includes those who are, or who meet the criteria to become, designated as Youth Services Agencies. Therefore, while OJA is required to use its current network of service providers, it is not limited to using the actual providers who were being used to provide services on the effective date of the new appropriation bill.
 III. Restricting Providers Under The New Delivery System To The Existing System Of Providers Through The Use Of Fixed Rate Contracts Does Not Violate The Oklahoma Central Purchasing Act, As That Act Provides For The Use Of Fixed Rate Contracts If Certain Statutory Procedures Are Followed.
¶ 9 You next ask whether restricting providers to existing community at-risk service providers violates the competitive bidding provisions of the Oklahoma Central Purchasing Act ("Act"). See 2003 Okla. Sess. Laws ch. 342 (amending 74 O.S.2001, §§ 85.4[74-85.4], 85.5, 85.7, 85.12, 85.42 and creating a new law at § 85.33A). These statutes govern the expenditures of various State agencies in acquiring goods and services. See id. The Act grants the State Purchasing Director the sole and exclusive authority and responsibility for the acquisition of all materials, supplies, equipment, and services acquired, used or consumed by state agencies, subject to certain exceptions not applicable here. 74 O.S. Supp. 2003, § 85.5[74-85.5](A). The Act generally provides that no State agency is to make an acquisition for an amount exceeding $25,000.00 without submitting a requisition and suppliers' competitive bids or proposals to the State Purchasing Director. Id. § 85.7(A)(1).
¶ 10 The Act contains a specific provision for fixed rate contracts, providing at Section 85.7 that "[a]ny acquisition of a service which the Department of Central Services has approved as qualifying for a fixed and uniform rate shall be made pursuant to the provisions" which require the Department of Central Services to establish criteria and guidelines for qualifying services. 74O.S. Supp. 2003, § 85.7[74-85.7](A)(11)(a), (b). You state in your letter that current community at-risk services are being provided through fixed rate contracts with the individual private, non-profit youth services agencies.[4] The use of fixed rate contracts is in accordance with State law which specifically provides that OJA may enter into financial agreements with any private agency for juvenile delinquency prevention programs and juvenile treatment programs. 10 O.S. 2001, § 7302-3.4[10-7302-3.4]. State law also provides that funds for designated Youth Services Agency programs "shall be made available through contracts negotiated by the Department of Juvenile Justice, to organizations designated by the Department of Juvenile Justice as `Youth Services Agencies'." 10 O.S. Supp. 2003, § 7302-3.6a(A). Thus, under the new legislation requiring the implementation of a Medicaid organized health care delivery system, OJA's continued payment of rehabilitative services through fixed rate contracts, if done in compliance with State procedural requirements, does not violate the competitive bidding requirements of the Central Purchasing Act.
 IV. OJA Must Consult With The Association Of Youth Services In Developing A Health Care Delivery System.
¶ 11 You next ask whether OJA may consult with the Association of Youth Services in developing an organized health care delivery system in which providers of services will be restricted to association member agencies. The network of community at-risk service providers currently used by OJA is composed of "association member agencies" of the Association of Youth Services. Your apparent concern is that there may be a conflict of interest if the association whose members are to be selected is consulted regarding the health care delivery system. The 2003 appropriations bill, however, requires that the delivery system "shall be developed in consultation with the Oklahoma Health Care Authority and Oklahoma Association of Youth Services." 2003 Okla. Sess. Laws ch. 423, § 3. "Shall" is a mandatory term requiring OJA to consult with the Oklahoma Association of Youth Services.Grimes v. City of Oklahoma City, 49 P.3d 719, 724 (Okla. 2002). Thus, OJA not only may, but must, consult with the Oklahoma Association of Youth Services and the Oklahoma Health Care Authority regarding the Medicaid organized health care delivery system.[5]
¶ 12 We note that the appropriation bill requires "consultation" with the Oklahoma Association of Youth Services and the Oklahoma Health Care Authority. This places the decision-making authority regarding the implementation of the Medicaid program with OJA.
 V. The Mandates Of An Appropriation Bill Expire At The End Of The Fiscal Year.
¶ 13 You last ask whether the mandates contained in the appropriation bill, 2003 Okla. Sess. Laws ch. 423, expire at the end of the fiscal year. The bill is clearly designated by its title as an appropriation bill, and the mandate that OJA implement a Medicaid organized health care delivery system and use existing community at-risk service providers, is part of that appropriation bill. See id.
¶ 14 The Oklahoma Supreme Court has held that "within the meaning of sec. 55 [of Article V of the Oklahoma Constitution] an appropriation is an authority of the Legislature given at the proper time and in the legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year for a specified object [here the Medicaid organized health care delivery system] or demand against the State." In re Initiative Petition No. 332, 776 P.2d 556,558 (Okla. 1989) (emphasis added). It is clear from this language that appropriations apply to a given year.
¶ 15 The future of the newly implemented health care delivery system is contingent upon continued funding on a fiscal year basis by the Legislature. As the mandate was made in an appropriation bill, the mandate expires at the end of the fiscal year as it is part of the appropriation.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The mandate within the appropriation bill for the Office of Juvenile Affairs ("OJA") to use existing community at-risk service providers in the new Medicaid organized health care delivery system means that OJA is required to use the current system of providing rehabilitative services through a network of agencies who are, or who may become, designated as Youth Services Agencies pursuant to 10 O.S. Supp. 2003, § 7302-3.6a(A). See 2003 Okla. Sess. Laws ch. 423, § 3. OJA is not limited to using the actual providers who were providing services on the effective date of the new appropriation bill.
 2. If statutory procedures regarding fixed rate contracts are followed, OJA may restrict its providers of rehabilitative services to existing community at-risk service providers in an organized health care delivery system through fixed rate contracts without violating the Oklahoma Central Purchasing Act, as that Act provides an exception for fixed rate contracts. 74 O.S. Supp. 2003, § 85.7(A)(11).
 3. The express terms of 2003 Okla. Sess. Laws ch. 423, § 3, require that OJA consult with the Association of Youth Services and the Oklahoma Health Care Authority in developing an organized health care delivery system. This requirement to consult places the decision-making authority with OJA.
 4. The appropriation bill which directs the expenditure of funds to implement a Medicaid organized health care delivery system, 2003 Okla. Sess. Laws ch. 423, § 3, expires at the end of the fiscal year as an appropriation bill within the meaning of Okla. Const. art. V, § 55, which is defined as the authority of the Legislature to apply a specified sum "in a given year." In re Initiative Petition 332, 776 P.2d 556, 558 (Okla. 1989).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 SANDRA D. RINEHART Senior Assistant Attorney General
[1] The term "organized health care delivery system" is a term of art under federal regulations governing Medicaid recipients. "Organized health care delivery system" is defined at42 C.F.R. § 447.10(b) which states, "Organized health care delivery system means a public or private organization for delivering health services. It includes, but is not limited to, a clinic, a group practice prepaid capitation plan, and a health maintenance organization." Id.
[2] A portion of the bill providing for use of $1,400,000.00 of the community at-risk services program funds for a statewide juvenile tracking system was vetoed by Governor Brad Henry on June 7, 2003. See 2003 Okla. Sess. Laws ch. 423, § 2.
[3] See letter from Richard DeLaughter, Executive Director, Office of Juvenile Affairs, to Drew Edmondson, Attorney General of Oklahoma (Aug. 8, 2003) (on file with the Attorney General's Office).
[4] Letter from Richard DeLaughter, Executive Director, Office of Juvenile Affairs, to Drew Edmondson, Attorney General of Oklahoma (Aug. 8, 2003) (on file with the Attorney General's Office).
[5] We presume that the requirement for OJA to consult with the Oklahoma Health Care Authority is intended to comply with the requirement that there be a single State agency to administer the State plan.