Dear Executive Director DeLaughter,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] grant an exclusive right to currently existing private, non-profit Youth Services Agencies to receive government contracts?
 2. May the Department of Juvenile Justice be required to use competitive bid or proposal provisions of the Central Purchasing Act when awarding contracts to designated Youth Services Agencies under 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a], which requires that such contracts shall be negotiated by the Department?
 3. Does 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] grant the Oklahoma Association of Youth Services an exclusive right to receive a government contract in violation of the Oklahoma Constitution?
 4. Does 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] violate the Oklahoma Constitution by expressly granting the Oklahoma Association of Youth Services influence in the governmental function of designating youth services agencies?
 5. Does 74 O.S. Supp. 2005, § 85.41(G)(1) require that uniform rate contracts be used for professional services purchased by the Office of Juvenile Affairs from youth services agencies?
 6. Does an appropriation bill that prohibits an executive branch agency from cutting the budget of private contractors violate the Oklahoma Constitution?
 Background
¶ 1 The Office of Juvenile Affairs ("OJA") was created July 1, 1994 by the Oklahoma Legislature. See 10 O.S. 2001, § 7302-2.2[10-7302-2.2](A). The Legislature created within OJA the Department of Juvenile Justice and charged that department with being responsible for "programs and services for juveniles alleged or adjudicated to be delinquent or in need of supervision." Id. § 7302-2.2(A)(1). Effective July 1, 1995 a number of programs or divisions were transferred, "along with funding allocations, from the Department of Human Services to the Department of Juvenile Justice." Id. § 7302-3.1(E). As "planner and coordinator for juvenile justice and delinquency prevention services," the Department of Juvenile Justice is statutorily authorized to "enter into agreements for the establishment and maintenance of community-based prevention and diversionary youth services."Id. § 7302-3.3. Section 7302-3.4 of Title 10 states:
 The Department of Juvenile Justice, in its role as planner and coordinator for juvenile justice and delinquency prevention services, is hereby authorized to enter into financial agreements with federal, state and local agencies or entities of government, or with any private agency, for juvenile delinquency prevention programs and juvenile treatment programs.
Id.
¶ 2 Your questions relate to details for obtaining juvenile delinquency prevention programs and juvenile treatment services from designated Youth Services Agencies under 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a].
 I. Current Designated Youth Services Agencies Have No Exclusive Right to Contracts With OJA.
¶ 3 OJA, through its Department of Juvenile Justice, has the statutory authority to designate certain vendors as Youth Services Agencies based on the criteria set forth at 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a](A), (B). OJA has implemented administrative rules through the Oklahoma Administrative Procedures Act for designation of providers as Youth Services Agencies, establishing additional criteria for designation, providing for a written application process, implementing a peer review process and instituting an appeal process and administrative hearing process for those agencies whose designation is terminated. See OAC 377:15-1-3-15-1-6 (1997).
¶ 4 Section 7302-3.6a of Title 10 details in pertinent part that:
 A. Funds specifically appropriated to the Office of Juvenile Affairs for designated Youth Services Agency programs . . . shall be made available through contracts negotiated by the Department of Juvenile Justice, to organizations designated by the Department of Juvenile Justice as "Youth Services Agencies". . . . The criteria for designation of Youth Services Agencies shall include but shall not be limited to:
 1. Capability to deliver all or part of the compensable services enumerated in Section 7302-3.3 of Title 10 of the Oklahoma Statutes, if the Youth Services Agency is to provide such services;
 2. Capability to deliver all or part of the compensable children's services that the Department of Human Services is authorized to provide for by contract with a private agency, if the Youth Services Agency is to provide such services;
 3. Adequate and qualified staff who are available as needed, within a reasonable time after being contacted for services in each county served by the agency;
 4. Adequate services in each county served by the agency;
5. Financial viability; and
 6. A documented need for the local services to be offered.
 B. The criteria for designation of Youth Services Agencies also may include:
 1. Successful completion of peer review processes by the Oklahoma Association of Youth Services; and
 2. Such other criteria as the Board of Juvenile Affairs determines appropriate.
Id.
¶ 5 Accordingly, both legislative enactments and administrative procedures detail the manner and method for designation of Youth Services Agencies. New or existing entities may be designated as Youth Services Agencies. A group of past vendors is not necessarily granted an exclusive right to contracts with OJA. New vendors may seek and be granted designation as Youth Services Agencies. Accordingly, 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] does not create exclusive rights for an existing group of designated Youth Services Agencies.
 II. OJA, Through Its Department Of Juvenile Justice, May, If Certain Conditions Are Met, Use Bid Procedures, Including Bid Procedures Found In The Oklahoma Central Purchasing Act, To Make Acquisitions From Vendors Designated As Youth Services Agencies.
¶ 6 Under the Oklahoma Central Purchasing Act purchasing products or services is defined as an acquisition.[1] Youth Services Agencies and other providers are designated as suppliers or vendors.[2] You ask whether OJA, when making acquisitions from a specific set of vendors, is prohibited from using bid procedures found in the Oklahoma Central Purchasing Act because statutory language uses the term "negotiated" when referencing this type of vendor contract. The exact language you question is found in Section 7302-3.6a(A), and states that programs "shall be made available through contracts negotiated
by the Department of Juvenile Justice, to organizations designated by the Department of Juvenile Justice as `Youth Services Agencies'." Id. (emphasis added).
¶ 7 As discussed below we conclude that negotiated contracts may be obtained by using bid procedures found in the Oklahoma Central Purchasing Act or through internal OJA bidding procedures.
¶ 8 The general competitive bidding statute is found at 74O.S. Supp. 2005, § 85.7[74-85.7]:
 A. 1. Except as otherwise provided by the Oklahoma Central Purchasing Act, no state agency shall make an acquisition for an amount exceeding Twenty-five Thousand Dollars ($25,000.00) without submission of a requisition to the State Purchasing Director and submission of suppliers' competitive bids or proposals to the State Purchasing Director.
 2. Any acquisition a state agency makes shall be made pursuant to the Oklahoma Central Purchasing Act and rules promulgated pursuant thereto.
Id.
¶ 9 In governmental competitive contracting, generally one of two procedures is used. One procedure uses an invitation to bid (ITB) or invitation for bid (IFB), while the other procedure uses the request for proposal (RFP).[3] The distinction between the two procedures has been noted by several authorities:
 Typically, an IFB [ITB] is rigid and identifies the solution to the problem. By definition, the invitation specifically defines the scope of the work required by soliciting bids responsive to detailed plans and specifications set forth. On the contrary, an RFP is flexible, identifies the problem, and requests a solution. Consideration of a response to an IFB is controlled by cost, that is, the lowest and best bid, whereas consideration of an offer to an RFP is controlled by technical excellence as well as cost.
Dana, Larson, Roubal Assoc. v. Bd. of Comm'rs, 864 P.2d 632,637 (Idaho Ct.App. 1993) (citations omitted).
 When a prospective contractor responds to an RFP . . . he is not necessarily submitting a final bid but may be merely opening the door for discussions with the government.
Id. at 637 n. 3 (quoting Glenn E. Monroe, Government Contract Law Manual § 2.35 at 28 (1979)).
¶ 10 The Oklahoma Central Purchasing Act, 74 O.S. 2001 Supp.2005, §§ 85.1 though 85.45K, does not prohibit negotiated contracts when using "RFP" bid procedures. Likewise, specific legislative enactments favor negotiated contracts using RFP procedures.
¶ 11 In 19 O.S. 2001, § 458[19-458], with respect to energy conservation contracts by political subdivisions, the Legislature specifically endorsed such methods:
 E. 3. The contract shall be awarded to the responsible offeror whose proposal, following negotiations, is determined to be the most advantageous to the political subdivision considering the guaranteed savings and other evaluation factors set forth in the request for proposals.
Id. The Employee Benefits Council ("EBC") at 74 O.S. 2001, §1365[74-1365](A)(10) is required to "negotiate for best and final offer through competitive negotiation and contract with federally qualified health maintenance organizations." EBC uses RFP bidding procedures from the Department of Central Services ("DCS") to accomplish this statutory duty.
 EBC has the duty to negotiate and contract with qualified health maintenance organizations . . . in order to provide a choice of health insurance programs for employees and educators.
 The insurance plan and its costs are developed by EBC. DCS [Department of Central Services] then conducts the contracting process with private providers, such as HMO, using Requests for Proposals (RFP) initiated by EBC and which DCS sends to prospective bidders.
Pacificare v. Okla. Health Care Auth. Bd., 25 P.3d 930, 932
(Okla Ct. App. 2001)
¶ 12 Statutes relating to the Council of Bond Oversight and the State Bond Advisor require, when engaging underwriters, bond attorneys and other experts, that requests for proposals be negotiated. 62 O.S. Supp. 2005, § 695.7[62-695.7](A)(1).
¶ 13 Further, DCS currently has specific administrative rules concerning RFP bidding procedures which include contract negotiations.
 The State Purchasing Director . . . may negotiate consolidation contracts, enterprise agreements, and high technology system contracts in lieu of or in conjunction with bidding procedures by noting in the solicitation that negotiations will be conducted. . . .
OAC 580:15-2-7 (2005).
¶ 14 We find no legislative enactments that suggest OJA would be prohibited from using competitive bidding techniques as part of negotiating contracts with the designated Youth Services Agencies. State agencies and state officers have "such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980). Accordingly, we conclude that OJA, through its Department of Juvenile Justice, may use competitive RFP bidding procedures as part of negotiating contracts with designated Youth Services Agencies. OJA may accomplish this by creating its own internal procedures[4] or by using the procedures of DCS.[5]
 III. OJA Is Not Required To Contract With The Oklahoma Association Of Youth Services.
¶ 15 The statutory language that relates to the issue of contracting with the Oklahoma Association of Youth Services ("OAYS"), 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a](G), states that:
 The Office of Juvenile Affairs is authorized to contract with the Oklahoma Association of Youth Services for evaluation, training and materials for the First Time Offender Program and for statewide office support, including rental of office space and general technical assistance for Youth Services Agencies with which the Office of Juvenile Affairs has contracts.
Id.
¶ 16 A statement that a matter "is authorized" does not require mandatory action but simply "is permissive." Fisher v. Hussey,108 P. 374, 375 (Okla. 1910). Accordingly, it cannot be said that the OAYS is granted any exclusive contract with OJA. Contracting between OJA and OAYS is permissible, not mandatory.
 IV. Requiring OJA To Accept Input From The klahoma Association Of Youth Services, A Private Organization, Does Not Improperly Interfere With OJA's Executive Authority.
¶ 17 You ask if there is constitutional infirmity because OAYS has "influence" in OJA decisions. We understand you are again referencing 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a], which notes that youth services agency designations:
 A. [S]hall be granted based on need, as indicated in the State Plan for Services to Children and Youth, and in accordance with criteria approved by the Board of Juvenile Affairs after full consideration of any recommendations of the Department of Human Services and the Oklahoma Association of Youth Services.
Id. (emphasis added).
¶ 18 This statute, by its terms, permits OAYS, a private entity, and DHS, a governmental entity, to recommend which providers in their opinion should receive designation by the Board of Juvenile Affairs. The Board must consider these recommendations but the decision always resides with the Board. We can find no provisions of State law that would prohibit this type of input from an association such as OAYS.
¶ 19 The "Message from the Director — Shawn Black" at the OAYS web site, http://www.oays.org/states the following:
 Our association is comprised of 41 "designated" not-for-profit youth service agencies located throughout Oklahoma. A local board of directors governs each youth service agency. Youth service agencies are dedicated to providing high quality services to our state's greatest assets-children, youth and families. These community based services can include: individual and group counseling, mentoring, parenting classes, first offender programs, shelters, community intervention centers, and services for at-risk youth. . . .
 The Oklahoma Association of Youth Services provides each member agency with peer review, information exchange, systems analysis and program development.
Id.
¶ 20 It appears to us that this organization is similar to other private associations that have substantial input into governmental operations. Just a few examples are the American Correctional Association, 10 O.S. 2001, § 7304-1.3[10-7304-1.3](D)(2); Building Officials and Code Administrators, 74 O.S. Supp. 2005,§ 324.8[74-324.8] and the Joint Commission on Accreditation of Healthcare Organizations/Home Care Accreditation Services. 63 O.S. Supp. 2005, § 1-1963[63-1-1963](A)(3)(b). All of these statutes show a general policy of the Legislature to require administrative agencies to accept input from certain designated private organizations.
¶ 21 The power to determine policy of the law is primarily legislative, while the power to make rules of a subordinate character to carry out the policy legislatively determined is executive. City of Sand Springs v. Dep't of Pub. Welfare,608 P.2d 1139, 1144 (Okla. 1980). Only where the Legislature usurps executive power would a constitutional infirmity arise. In reOkla. Dep't of Transp., 64 P.3d 546, 550 (Okla. 2002).
¶ 22 Concerning this legislative scheme, OJA is required to give consideration to recommendations, if any, from DHS and OAYS. It cannot be said that this kind of input from an outside private entity or from DHS limits or usurps the executive decision-making authority of OJA. The final decision resides with the executive agency. We find no legislative usurpation of executive authority by this procedure.
 V. Contracts Between OJA And Designated Youth Services Agencies May Be Subject To The Nonuniform Payment Exception Under 74 O.S. Supp. 2005, § 85.41 If Appropriate, But Only Upon Approval By The State Purchasing Director.
¶ 23 OJA may enter into financial agreements with private agencies for juvenile delinquency prevention programs and juvenile treatment programs. 10 O.S. 2001, § 7302-3.4[10-7302-3.4]. You ask if 74 O.S. Supp. 2005, § 85.41[74-85.41] requires all contracts with designated Youth Services Agencies to be uniform rate contracts.
¶ 24 Section 85.41(G) states that with respect to professional service contracts:
 1. Contracts for professional services shall provide for payment for services at a uniform rate throughout the duration of the contract if the services throughout the duration of the contract are similar and consistent.
 2. No state agency shall execute a contract for professional services providing for nonuniform payments throughout the duration of the contract without authorization of the State Purchasing Director.
Id.
¶ 25 Professional Services are defined at 74 O.S. 2001, §85.2[74-85.2]:
 25. "Professional services" means services which are predominantly mental or intellectual in character rather than physical or manual and which do not involve the supplying of products. Professional services include services to support or improve state agency policy development, decision making, management, administration, or the operation of management systems[.]
Id.
¶ 26 Section 85.41 only applies to professional service contracts that fit within this definition. Thus, professional services contracts which fit this definition must be uniform over the duration of the contract unless and until a nonuniform rate is approved by the State Purchasing Director.[6]
¶ 27 Therefore, we conclude that Section 85.41 does not necessarily require, in all instances, that professional service contracts be uniform over the duration of the contract, but may be nonuniform if, and only if, approved by the State Purchasing Director.
 VI. The Legislature May Make Appropriations To Be Used For The Purpose Of Contracts With Youth Services Agencies, While Cutting Other Appropriations.
¶ 28 You ask if the Legislature may specifically designate appropriations for payment of contracts with designated Youth Services Agencies, while cutting appropriations to other OJA programs.
¶ 29 The Oklahoma Supreme Court has held that "within the meaning of sec. 55 [of Article V of the Oklahoma Constitution] an appropriation is an authority of the Legislature given at the proper time and in the legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year for a specified object or demand against the State." In re Initiative Pet. No. 332,776 P.2d 556, 558 (Okla. 1989). An appropriation, the object of which is for a specific sum for specific services, is by definition within the power of the legislature.
 [T]he appropriation of moneys for the various state purposes rests in the sole discretion of the Legislature, limited only by the Constitution. Those limitations . . . generally pertain to methods of levying and appropriating taxes and leaves the state purposes served by the use of such tax money largely to the unfettered discretion of the Legislature.
In re Okla. Dev. Fin. Auth., 89 P.3d 1075, 1085 (Okla. 2004).
¶ 30 Accordingly, the Legislature has extremely broad power in making appropriations for specific programs or services, while cutting appropriations for other services. We can find no constitutional infirmity.
¶ 31 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] does not provide currently designated non-profit youth services agencies exclusive rights to receive government contracts.
 2. The Office of Juvenile Affairs, through its Department of Juvenile Justice may, if all conditions precedent are in place, use competitive request for proposal procedures ("RFP") of the Central Purchasing Act, 74 O.S. 2001 Supp. 2005, §§ 85.1 through 85.44C or internal agency procedures when awarding negotiated contracts to designated Youth Services Agencies, so long as final contracts are negotiated by the Department of Juvenile Justice and not the Department of Central Services.
 3. Title 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] does not grant the Oklahoma Association of Youth Services exclusive rights to receive a government contract.
 4. Title 10 O.S. Supp. 2005, § 7302-3.6a[10-7302-3.6a] does not violate the Oklahoma Constitution or any provision of State law by expressly granting the Oklahoma Association of Youth Services the ability to recommend entities for designation as Youth Services Agencies, as the final determination of which entities shall receive designation rests with the Office of Juvenile Affairs.
 5. Title 74 O.S. Supp. 2005, § 85.41(G)(1) and (2) permit the use of nonuniform rate contracts for professional services purchased by the Office of Juvenile Affairs from designated Youth Services Agencies, but only if specifically permitted by the State Purchasing Director. Whether a specific contract is one for professional services raises fact questions that are not addressed in Attorney General Opinions. 74 O.S. 2001, § 18b(A)(5).
 6. An appropriation bill under Article V, Section 55 of the Oklahoma Constitution may include appropriations for services provided by designated Youth Services Agencies, while cutting appropriations for other Office of Juvenile Affairs programs or services.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GUY L. HURST Senior Assistant Attorney General
[1] "Acquisition" means items, products, materials, supplies, services, and equipment a state agency acquires by purchase, lease-purchase, lease with option to purchase, or rental pursuant to the Oklahoma Central Purchasing Act unless the items, products, supplies, services, or equipment are exempt pursuant to the Oklahoma Central Purchasing Act[.]
74 O.S. 2001, § 85.2[74-85.2](1).
[2] "`Supplier' or `vendor' means an individual or business entity that sells or desires to sell acquisitions to state agencies." Id. § 85.2(36).
[3] In Oklahoma both procedures are grouped together; a vendor responding to an ITB or an RFP is considered a bidder.
 3. "Bid" or "proposal" means an offer a bidder submits in response to an invitation to bid or request for proposal;
 4. "Bidder" means an individual or business entity that submits a bid or proposal in response to an invitation to bid or a request for proposal[.]
74 O.S. 2001, § 85.2[74-85.2].
[4] Although not part of this Opinion request, we note that OJA should first determine for itself whether administrative rules must be promulgated under the Oklahoma Administrative Procedures Act as a necessary precondition to utilizing internal competitive bid techniques when negotiating contracts with designated Youth Services Agencies.
[5] The Central Purchasing Act contracts are generally considered contracts of DCS and are negotiated and managed by DCS. Ind. Nat'l Bank v. State ex rel. Dep't of Human Serv.,857 P.2d 53, 62-65 (Okla. 1993). Thus, we believe that for OJA to use DCS's bidding procedures it may be necessary and appropriate for the agencies to enter into an interagency agreement that assures OJA retains its statutory authority to "negotiate" the contract with designated Youth Services Agencies. See for example, 74 O.S. 2001, §§ 581[74-581] and 1008(A), which permit interagency contracts.
[6] Whether a specific contract with a designated Youth Services Agency fits the definition of professional services is fact-specific and cannot be addressed in Attorney General Opinions. 74 O.S. 2001, § 18b[74-18b](A)(5).